IN RE ESTATE OF PICKENS *v.* PICKENS.

[No. 169A16, 1070S248. Filed October 20, 1970. Transfer granted October 20, 1970.]

*Robert T. Buehl, G. Terry Cutter, Rhoads, Linder, Meyer & Buehl,* of Indianapolis, for appellant.

*Joseph P. Sullivan, J. Roland Duvall,* of Indianapolis, for appellee.

HUNTER, C.J.—This appeal arises out of a wrongful death action brought by appellant pursuant to Ind. Ann. Stat. § 2-404 (1967 Repl.) in the Marion County Probate Court. Appellant, as the administratrix of the estate of Robert Lowell Pickens, deceased, brought suit for damages resulting from the wrongful death of the intestate which damages were to inure to the exclusive benefit of the deceased's two dependent minor sons, Robert Rex and Michael Duane Pickens. The decedent's death was caused by a fatal gunshot wound inflicted by his second wife, Helen Foster Pickens, hereinafter referred to as appellee, who later plead guilty and was convicted of the crime of involuntary manslaughter.

The amended complaint filed by plaintiff-appellant was in four paragraphs the contents of which are too lengthy to be set out in full here. For the purposes of this opinion it is sufficient to state in summary that the plaintiff-appellant properly alleges that she has been appointed successor administratrix of the decedent's estate; that the appellee, Helen Foster Pickens, wife of the decedent wrongfully caused the decedent's death by committing an assault and battery in that she fired a shotgun into the torso of the deceased thereby wrongfully and unlawfully killing him; that the decedent left surviving him two minor sons by a former marriage to whom he was responsible for support; that the deceased was an able-bodied man employed as a construction welder at the time of his death; and that by reason of the wrongful death of the deceased his estate was damaged and his sons were permanently deprived of their means of support.

Although the allegations as to material facts were essentially the same for each paragraph of the complaint, the theory of recovery was somewhat different as noted by defendant-appellee's demurrer which was filed in identical form to all four paragraphs of the complaint and reads in pertinent part as follows:

"1. The court has no jurisdiction of the subject matter of the action.

2. The plaintiff has not legal capacity to sue.

3. Several causes of action are improperly joined in the complaint in this: Paragraph I purports to allege an action for wrongful death, pursuant to Burns Ind. Anno. (1966 Supp.) Sec. 2-404, and is brought by the administratrix for the apparent benefit of alleged next of kin; Paragraph II purports to allege an action for damages to the estate of the decedent; Paragraph III again purports to allege an action for wrongful death, pursuant to Burns Ind. Stat. Anno. (1966 Supp.) Sec. 2-404 and is brought by the Administratrix for the apparent benefit of alleged next of kin; Paragraph IV again purports to allege an action for damages to the estate of the decedent.

4. The complaint does not state facts sufficient to constitute a cause of action."

The Marion County Probate Court sustained paragraphs II, III and IV of the demurrer and overruled paragraph I. Plaintiff-appellant filed a motion to reconsider the said rulings which was denied by the court. Thereafter plaintiff-appellant refused to plead over and requested that final judgment be entered on the demurrer. The court entered judgment as requested and appellant appealed the same to the Appellate Court.

The Appellate Court by written opinion (*In re Estate of Pickens* v. *Pickens* (1970), 252 N. E. 2d 505) affirmed the trial court's decision but dealt only with the question of whether or not Indiana's Wrongful Death statute could be construed to abrogate the doctrine of interspousal immunity in cases falling under its provisions. The Appellate Court essentially held that the doctrine did apply and accordingly denied recovery since the wrongful death of the decedent was here caused by his spouse, Helen Foster Pickens. This holding made it unnecessary for the court to dispose of appellee's other grounds for demurrer.

Appellant now seeks to transfer the case to this court on the ground that the Appellate Court erroneously decided a new question of law in its holding that the common law doc-

trine of interspousal immunity precluded recovery by a representative of the deceased spouse against the other under the Wrongful Death statute. Because of the importance of the issue and the nature of this particular case, we deem it appropriate to grant transfer in order to determine its proper disposition.

There can be no question that the doctrine of interspousal immunity in tort actions is the law in Indiana. See generally, Comment, 3 Ind. Legal F. 297 (1969). Its origin has been traced to the early case of *Barnett* v. *Harshbarger* (1885), 105 Ind. 410, 5 N. E. 718, where the court was involved with the validity of a contract between spouses. The theoretical basis for the rule was there explained as follows:

> "The rule of the common law proceeds upon the theory that in legal contemplation the husband and wife are one person, and not upon the theory that the wife is under a legal disability." 105 Ind. at 412-413.

One of the basic policy considerations behind the rule was also referred to:

> "To disturb it would overthrow the settled policy of the common law, and, according to the theory of the law, create dissensions between husband and wife by requiring the wife to sue the husband during the existence of the marital relation, or lose her rights by lapse of time, *thus creating discord and strife which it was the purpose of the common law to prevent."* (emphasis added) 105 Ind. at 415.

Perhaps the first case to apply the immunity doctrine in a personal tort action was that of *Henneger* v. *Lomas* (1896), 145 Ind. 287, 44 N. E. 462. Since that time, the repeated recognition of the doctrine by the Appellate Court has remained undisturbed by this court. See e.g. *Hanna* v. *Hanna* (1968), 143 Ind. App. 490, 241 N. E. 2d 376; *Hunter* v. *Livingston* (1955), 125 Ind. App. 422, 123 N. E. 2d 912; *Blickenstaff* v. *Blickenstaff* (1929), 89 Ind. App. 529, 167 N. E. 146.

Although the Indiana General Assembly has somewhat modified the common law legal relationship between husband and wife by enacting the Married Women's Act, Ind. Ann. Stat. §§ 38-101-126 (1949 Repl., 1970 Supp.), the doctrine of interspousal immunity as recited in *Barnett, supra,* has yet to be wholly expunged from the law especially in the area of tort actions. This is particularly interesting when considered in relation to Ind. Ann. Stat. § 38-105 (1949 Repl.), for that section of the Married Women's Act all but destroys the unity concept articulated in *Barnett:*

> "Married women, without reference to their age, shall be liable for torts committed by them, and an action may be prosecuted against them for torts committed, as if unmarried. Husbands shall not be liable for the contracts or the torts of their wives."

> Any doubt about the continuing vitality of the unity theory was dispelled by the 1969 Legislature in its adoption of the new rules of civil procedure:

> "Sex, Marital and Parental Status. For the purposes of suing or being sued there shall be no distinction between men and women or between men and women *because of marital* or parental *status;* provided, however, that this subdivision (D) shall not apply to actions in tort." T.R. 17(D). (our emphasis)

Although the effect of the proviso at the end of the rule tends to nullify the apparent intended purpose of the provision (See Comment, Harvey, 2 Indiana Practice 214 [1970]), the section nevertheless, admits that each spouse may singularly sue or be sued notwithstanding the marital relationship except in tort actions.

Possibly through a recognition that the passage of the Married Women's Act has undermined the persuasiveness of the unity theory when concerned with interspousal immunity in tort actions, the courts have relied more heavily in recent years on the policy considerations of avoiding marital strife. See generally, Prosser, Law of Torts, 879 (3rd Ed. 1964). It

has been said that personal tort actions between spouses would tend to disrupt or destroy the peace and harmony of the home; that suits between spouses would lead to dissolution of the very fabric of the marriage and encourage outside interference in problems which are best solved between the parties themselves; that there is sufficient remedy in the criminal and divorce laws. However as Dean Prosser has noted:

> "This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy—and this even though she has left him or divorced him for that very ground, and although the same courts refuse to find any disruption of domestic tranquillity if she . . . brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it." Prosser, supra, at 883.

The incongruity of this position in light of the development of the law in other areas affecting a spouse's rights against the other is striking and has not escaped our own courts:

> ". . . under the present status of the law in this state, with what appears to be a glaring inconsistency in that a wife is given the right to sue her husband for a broken promise involving property, and for a wrecked home belonging to her, but not for a broken arm nor a broken body. To make such a distinction renders the person of the wife in a marriage completely subjugated to the will of her husband, as far as civil liability is concerned, for wilful and wanton injuries inflicted upon her person either before or during marriage, and that such injuries are of no concern or value when placed in the scale of justice alongside property rights. This seems to be inconsistent, inhumane, and contrary to the true spirit and intent of the acts passed for the emancipation of women in an enlightened civilization." *Hunter* v. *Livingston, supra,* 125 Ind. App. at 429, 123 N. E. 2d at 915.

The injustice inherent in a blanket denial of the right to bring an action in tort against one's spouse would appear to

far outweigh the tenuous reasons advanced for the preservation of the rule and puts in question the credibility of the constitutional guarantee found in our own constitution:

> "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Ind. Const., Art. 1, § 12.

Notwithstanding the theoretical basis upon which the doctrine rests or our feeling as to its validity, the issue presented in this case involves not the existence of the rule itself but rather the scope of its applicability. Here the appellee, decedent's spouse, is attempting to raise the doctrine of interspousal immunity as a defense to the administratrix' claim for damages under the Wrongful Death statute. Therefore we shall confine our consideration and holding to that precise situation.

Ind. Ann. Stat. § 2-404 (1967 Repl.) provides in pertinent part as follows:

> "Action for wrongful death.—When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefore against the latter, *if the former might have maintained an action had he or she, as the case may be, lived,* against the latter for an injury for the same act or omission . . ." (our emphasis)

From a literal reading of the statute it would appear that appellant would be precluded from recovery since the decedent would not, because of the immunity doctrine, have been able to maintain the action had he lived. However for reasons upon which we shall expand we do not believe such a construction to be intended or required.

Indiana's Wrongful Death Act indirectly resulted from the old English case of *Baker* v. *Bolton* (1808), 1 Camp. 493, 170 Eng. Rep. 1033, in which Lord Ellenborough stated in broad terms and without authority that the death of a human being could not be complained of as an injury. The result was

intolerable since, as commentators were quick to point out, it became more profitable for a defendant to kill the plaintiff than to scratch him. The situation was remedied in England by the passage of Lord Campbell's Act in 1846 and all states in this country eventually followed suit with their own wrongful death statutes. The nature of the right thus created has been previously considered by this court:

> "The action which is given in this state under § 2-404, . . . *is a new action based solely on the right created by statute and is not the right of the decedent which survives to the named beneficiaries. City of Indianapolis v. Willis, Administrator* (1935), 208 Ind. 607, 613, 194 N. E. 343. *The action is given to afford compensation for those who have sustained pecuniary loss by the death. Louisville, New Albany and Chicago Ry. Co. v. Goodykoontz* (1888), 119 Ind. 111, 113, 21 N. E. 472, 12 Am. St. Rep. 371; *Consolidated Stone Co. v. Staggs* (1905), 164 Ind. 331, 335, 73 N. E. 695" (our emphasis) *Lindley v. Sink* (1940), 218 Ind. 1, 14-15, 30 N. E. 2d 456, 461.

The purpose of the statute then is to create a cause of action to provide a means by which those who have sustained a loss by reason of the death may be compensated. In light of this purpose the question for the court is whether the limitation found in the Wrongful Death Statute (i.e. maintainable only where deceased could have maintained it had he lived) should be construed to preclude recovery because of the interspousal immunity doctrine.

That the phrase ". . . if the former might have maintained an action had he or she, as the case may be, lived . . ." does not mean what it literally says has been demonstrated by the case of *N. O. Nelson Mfg. Corp. v. Dickson* (1944), 114 Ind. App. 668, 53 N. E. 2d 640, which in effect held that the personal administrator has two years from the time of death of the decedent to bring suit under the Wrongful Death Statute even though the decedent's cause of action for the injury which cause death was barred by the statute of limitations

prior to his death. See also *Wilson* v. *Jackson Hill Coal and Coke Co.* (1911), 48 Ind. App. 150, 95 N. E. 589.

In further support of the argument that the personal representative's suit is not completely restricted to that which could have been brought by the decedent, had he lived, is the case of *Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co.* v. *Brown* (1912), 178 Ind. 11, 97 N. E. 145. On the question of damages the court essentially held that damages must be awarded on the basis of the loss to the beneficiaries and not on the basis of those damages accruing to the deceased by virtue of the injury.

On the other hand such defenses as contributory negligence, *Chicago & E. Ill. Ry. Co.* v. *Hedges* (1889), 118 Ind. 5, 20 N. E. 530, a satisfied judgment, *Hecht* v. *Ohio & Miss. Ry. Co.* (1892), 132 Ind. 507, 32 N. E. 302, or a valid settlement *Haskell & Barker Car Co.* v. *Logermann* (1919), 71 Ind. App. 69, 123 N. E. 818, would preclude recovery by the personal representative as it would have the decedent had he lived. For further discussion of the direct vs. derivative nature of a suit under the Wrongful Death statute *see, Note,* 34 Ind. L.J. 108 (1958).

From the above, it can readily be seen that an action under the wrongful death statute has some derivative characteristics. However, as noted, our courts have expressly held that the statute *creates* a right for those who suffer a pecuniary loss by virtue of decedent's wrongful death. It is therefore apparent that the action derives from the tortious act and not from the person of the deceased.

This being so, it is our considered opinion that the Legislature never intended to write into the Wrongful Death statute the defense of interspousal immunity by the use of the qualifying phrase above referred to. To hold otherwise would, in cases such as this, defeat the very purpose of the statute by denying recovery to those suffering the loss. Further, all

justifications advanced for the application of the interspousal immunity doctrine cease upon the death of one of the marriage partners.

In this particular case the personal representative is suing the wife for damages which will inure to the exclusive benefit of two minor children who were dependent upon their deceased father for support. It would be a strange result indeed if their right recover damages depended upon the legal relationship of the person inflicting the wound to the decedent. There can be no doubt that the deceased's personal representative could have recovered under the Wrongful Death statute had any one other than the deceased's spouse inflicted the mortal wound. Yet because of the marital relationship of the decedent and appellee we are asked to bar the action on the basis of the interspousal immunity doctrine. As we have previously noted, the primary objective of that rule is to aid the marital relationship by preventing marital strife which it is felt would accrue from litigation between the spouses, yet the very relationship itself has been destroyed by the appellee's act. Were appellee to prevail, she would be protected by the very doctrine which was designed to maintain the unity of the marriage and promote domestic tranquillity in the home. Such an incredulous result cannot be countenanced.

In construing this or any other statute, this court shall endeavor to do so within the context of logic and reason. As we have stated on past occasions:

> "It is presumed that the Legislature does not intend an absurdity, and such a result will be avoided if the terms of the act admit of it by a reasonable construction. *Marks* v. *State* (1942), 220 Ind. 9, 40 N. E. 2d 108." *Town of Argos* v. *Ritz Craft Realty, Inc.* (1968), 250 Ind. 562, 238 N. E. 2d 14, 17.

Having reviewed the nature of the action created by the Legislature under the Wrongful Death statute and the reasons advanced for the imposition of the immunity doctrine we are of the opinion that the Legislature never intended nor does

reason require that actions such as this be barred by the qualifying language found in § 2-404. Nor, incidentally, does such a construction fly in the face of T.R. 17(D) since the bar raised by the interspousal immunity doctrine is not premised on a *distinction between men and women because of the marital status.* If it operates as a bar, it operates against both equally.

It is interesting to note that the courts of several of our sister states have taken a similar position. The Michigan Wrongful Death statute reads in pertinent part as follows:

"(1) Whenever the death of a person or injuries resulting in death, shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall be brought under this section.

(2) Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered . . ." Mich. Stat. Anno., § 27A.2922 (1962)

In construing this statute the Michigan Supreme Court, in the case of *Mosier* v. *Carney* (1965), 376 Mich. 532, 138 N. W. 2d 343 stated:

"In such circumstances, we can see no reason why suit should not be permitted. Collusion between the spouses is impossible and death has already destroyed 'the sacred relation of man and wife', so that 'public policy' does not enter as a bar . . .

The purpose of the statute is, of course, obvious: it was intended to remedy unconscionable results reached in liti-

gation under the common law whereby it was financially less burdensome to tort feasors to kill than merely to maim their victims.

One who sues under the wrongful death act is not suing solely for a wrong done to the decedent but rather, as well, upon a new cause of action specifically created as a remedy for those who suffer loss because of the decedent's death." 138 N. W. 2d at 352, 353.

Likewise in Illinois:

"Whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." S.H.A. ch. 70, § 1 (1959).

The Illinois Supreme Court held that an action under the above quoted statute did not bar an action by the deceased wife's administrator against the husband's administrator for the purpose of recovering damages to dependent minor daughter:

"We hold this action by the administrator to recover damages for the pecuniary loss suffered by a minor dependent daughter of Anna Davis is not within the contemplation of the common law rule that a wife cannot sue her husband. Accordingly, the administrator of the wife's estate may maintain in the present statutory action for wrongful death which derived from the wrongful act causing the death rather than the person of the deceased." *Welch* v. *Davis* (1951), 410 Ill. 130, 101 N. E. 2d 547, 551.

Note might also be made of cases in other jurisdictions which have passed on situations not dissimilar to that here. See e.g. *Robinson's Adm'r.* v. *Robinson* (1920), 188 Ky. 49, 220 S. W. 1074; *Poepping* v. *Lindemann* (1964), 268 Minn.

30, 127 N. W. 2d 512; *Kaczorowski* v. *Kalkosinski* (1936), 321 Pa. 438, 184 A. 663; *Deposit Guaranty Bank & Trust Co.* v. *Nelson* (1951), 212 Miss. 335, 54 So. 2d 476; *Russell* v. *Cox* (1944), 65 Idaho 534, 148 P. 2d 221. See generally 28 A.L.R. 2d 662.

Our holding in this case may be summarized as follows: a suit may be maintained under § 2-404, *supra,* predicated upon injuries to one spouse during the marriage arising out of the wrongful act of the marital partner, when the allegedly wrongful act, intentional or negligent, results in termination of the marriage by death.

Under the circumstances of this case, applying the afore-mentioned rule, we hereby grant appellant's petition to transfer and reverse the judgment of the Marion County Probate Court. This case is remanded to that court for further proceedings not inconsistent with this opinion.

Transfer granted. Judgment reversed.

Arterburn, DeBruler and Givan, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 263 N. E. 2d 151.