PATRICIA L. BROOKS *v.* GENE ROBINSON.

[No. 772S87. Filed July 10, 1972.]

*F. Boyd Hovde, Townsend, Hovde & Townsend,* of counsel, of Indianapolis, for appellant.

*James J. Stewart, Kent O. Stewart, Stewart, Irwin, Gilliom, Fuller & Meyer,* of counsel, of Indianapolis, for appellee.

HUNTER, J.—Petitioner, Patricia L. Brooks, is before this Court on an Application for Transfer seeking review of the Appellate Court's decision in *Brooks* v. *Robinson* (1971), 270 N. E. 2d 338. Petitioner (plaintiff below) instituted this action to recover damages for injuries sustained by her on January 6, 1964, while riding as a passenger in an automobile driven by Gene Robinson (defendant below). Brooks' original complaint was filed on July 28, 1964. On June 8, 1969, while

the action was pending, Brooks and Robinson were married. On January 15, 1970, the trial court sustained Robinson's Motion For Summary Judgment and entered judgment thereon based upon the proposition that the doctrine of interspousal immunity barred the plaintiff's action. On appeal, the judgment was affirmed by the Appellate Court. See, *Brooks* v. *Robinson, supra.*

In her Application for Transfer, petitioner contends that the doctrine of interspousal immunity should not apply to the facts of this case because both the injury and the filing of the complaint occurred prior to the marriage. Petitioner's second contention is that, regardless of the factual situation, the doctrine of interspousal immunity should no longer be the law in Indiana. Inasmuch as this Court is of the opinion that the doctrine of interspousal immunity should be abolished, it is only necessary that we consider petitioner's second contention.

The common law doctrine of interspousal immunity was based upon the theory that the husband and wife were one person. *In Re Estate of Pickens* (1970), 255 Ind. 119, 263 N. E. 2d 151; *Barnett* v. *Harshbarger* (1886), 105 Ind. 410, 5 N. E. 718. Also, see Prosser, Law of Torts, 859 (4th Ed. 1971). The result of this legal fiction was, of course, that all actions between husband and wife were barred. The restrictive effect of the doctrine has been modified considerably by statute. However, as this Court recognized in *Pickens,* the doctrine has continued to be retained in the area of tort actions.

The applicability of the doctrine of interspousal immunity to actions in tort appears to have been first recognized in Indiana in *Henneger* v. *Lomas* (1896), 145 Ind. 287, 44 N. E. 462, where the Court stated:

"As we have shown, the common law rule that marriage extinguished all rights of action in favor of the wife against the husband for ante-nuptial injuries by the husband to her person or character, was founded upon the principle of the

unity of husband and wife, and not upon the theory that the wife was under a legal disability. This rule of the common law is in force in this State, unless it has been changed by statute. This court has held that the same has not been abrogated." 145 Ind. at 293, 44 N. E. at 464.

The doctrine was held inapplicable to the facts in *Henneger* because the complaint alleged that the marriage between the parties was voidable. The Court ruled that if the marriage could be judicially declared a nullity, the wife's subsequent action for her seduction should be approached as if the marital relationship had never existed. In subsequent decisions involving actions in tort between husband and wife, *Henneger* was cited as authority for the proposition that the doctrine of interspousal immunity was a valid defense to such an action. See, *Hanna* v. *Hanna* (1968), 143 Ind. App. 490, 241 N. E. 2d 376; *Hunter* v. *Livingston* (1955), 125 Ind. App. 422, 123 N. E. 2d 912; *Blickenstaff* v. *Blickenstaff* (1929), 89 Ind. App. 529, 167 N. E. 146.

The validity of the doctrine was severely questioned by Judge Bowen in *Hunter* v. *Livingston, supra,* where he stated:

"Our courts have held that a married woman may maintain an action against her husband for injuries to her property. *Crater* v. *Crater* (1889), 118 Ind. 521, 21 N. E. 290; *Pavy* v. *Pavy* (1951), 121 Ind. App. 194, 98 N. E. 2d 224; *Atkinson* v. *Atkinson,* 167 F. 2d 793 (CCA 7th, 1948). However, our courts have taken the position that the common law rule is still in force, except that the statute gives the wife the right to sue alone in cases involving her property, and that the statute is silent as to injuries to person or character, *Hamm* v. *Romine* (1884), 98 Ind. 77; *Henneger* v. *Lomas, supra,* and, therefore, the remedy lies with the legislature, under the present status of the law in this state, with what appears to be a glaring inconsistency in that a wife is given the right to sue her husband for a broken promise involving property, and for a wrecked house belonging to her, but not for a broken arm nor a broken body. To make such a distinction renders the person of the wife in a marriage completely subjugated to the will of her husband, as far as civil liability is concerned, for willful and wanton injuries inflicted upon her person either before or

during marriage, and that such injuries are of no concern or value when placed in the scales of justice alongside property rights. This seems to be inconsistent, inhumane, and contrary to the true spirit and intent of the acts passed for the emancipation of women in an enlightened civilization." 125 Ind. App. at 428, 429, 123 N. E. 2d at 915.

Despite such criticism, the doctrine was summarily applied to all actions in tort between husband and wife until this Court's decision in *In Re Estate of Pickens, supra,* where it was determined that the doctrine had no applicability to actions brought under the Wrongful Death statute. To be sure, our holding in *Pickens* was expressly limited to the facts of that case. However, this Court made it quite clear in *Pickens* that the doctrine was looked upon with much disfavor.

Although the persuasiveness of the common law theory of unity between husband and wife has dwindled considerably, there are two arguments frequently advanced in favor of maintaining interspousal immunity in the area of tort law. The first argument is that tort actions between husband and wife would tend to disrupt the peace and harmony of the marriage; the second is that such actions would tend to promote fraud, collusion and trivial litigation.

In regard to the first argument, this Court is unpersuaded that tort actions will tend to disrupt the peace and harmony of the marriage. The law in its present state permits a wife to bring an action of ejectment against her husband. See, *Crater* v. *Crater* (1889), 118 Ind. 521, 21 N. E. 290. Either spouse is permitted to enforce an agreement by the other spouse to repay monies borrowed. *Hinton* v. *Dragoo* (1922), 77 Ind. App. 563, 134 N. E. 212; *Harrell* v. *Harrell* (1889), 117 Ind. 94, 18 N. E. 621. A wife is permitted to maintain an action in partition against her husband. *Pavy* v. *Pavy* (1951), 121 Ind. App. 194, 98 N. E. 2d 224. We find it difficult to understand how an action in tort would disrupt the tranquility of the marital state to any greater

degree than would actions in ejectment, partition, or contract. Professor Prosser's discussion of this matter perhaps best expresses our view.

> "The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy—and this even though she has left him or divorced him for that very ground, and although the same courts refuse to find any disruption of domestic tranquillity if she sues him for a tort to her property, or brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it." Prosser, Law of Torts, 863 (4th Ed. 1971).

We conclude, therefore, that the doctrine of interspousal immunity cannot be upheld under the guise of maintaining the peace and harmony of the marriage.

The contention that tort actions between husband and wife will tend to promote fraud, collusion and trivial litigation—especially where insurance is involved—is equally unpersuasive. Those who advocate this view have simply concluded that since the *possibility* exists that tort litigation between husband and wife will not constitute a truly adversary proceeding, we should therefore close the courtroom doors to these parties and leave the injured to suffer his loss and the wrongdoer to escape his liability. To adopt such a view requires the blanket assumption that our court system is so ill-fitted to deal with such litigation that the only reasonable alternative to allowing husband-wife tort litigation is to summarily deny all relief to this class of litigants. It should be noted that this "reasonable alternative" is absolutely contrary to the spirit of our legal system—namely, that an injured party may seek redress for his injuries in our courts.

In *Klein* v. *Klein* (1962), 58 Cal. 2d 692, 376 P. 2d 70, the court, when confronted with this argument, responded as follows:

"It would be a sad commentary on the law if we were to admit that the judicial processes are so ineffective that we must deny relief to a person otherwise entitled simply because in some future case a litigant may be guilty of fraud or collusion. Once that concept were accepted, then all causes of action should be abolished. Our legal system is not that ineffectual." 58 Cal. 2d at 696, 376 P. 2d at 73.

The possibility of fraud and collusion exists in all litigation. However, we are not convinced that the danger is so great when the plaintiff and defendant are also husband and wife that judicial relief should be summarily denied. Furthermore, it should not be overlooked that the testimony of both parties will be extremely vulnerable to impeachment at trial on the grounds of bias, interest and prejudice. The trial court's responsibility, indeed, its duty, to properly instruct the jury on the credibility of witnesses and the rules governing the weight of evidence will remain unchanged, and, as was stated in *United States* v. *Freeman* (2d Cir. 1966), 357 F. 2d 606, 620, ". . . it cannot be presumed that juries will check their common sense at the courtroom door."

It is next urged by counsel for defendant-appellee that if the doctrine of interspousal immunity is to be abolished, the courts should wait for legislative sanction for such action. However, as observed beforehand, the doctrine is a creature of the common law and is therefore judicially created. Judicial devotion to the doctrine of *stare decisis* is indeed a justifiable concept to be followed by our courts. However, it cannot and must not be so strictly pursued to the point where our view is opaqued and reality disregarded. To do so is to envision the common law to be as immutable as the laws of the Medes and Persians, and thus render our system of jurisprudence forever impotent. The strength and genius of the common law lies in its ability to adapt to the changing needs of the

society it governs. As Chief Justice Arterburn so aptly recognized in *Troue* v. *Marker* (1969), 253 Ind. 284, 252 N. E. 2d 800, where it was determined that a wife could recover for loss of consortium against a wrongdoer who injures her husband:

> "The common law must keep pace with changes in our society, and in our opinion the change in the legal and social status of women in our society forces us to recognize a change in the doctrine with which we are concerned in this opinion." 253 Ind. at 290, 252 N. E. 2d at 804.

We cannot close our eyes to the legal and social needs of our society, and this Court should not hesitate to alter, ■ amend, or abrogate the common law when society's needs so dictate.

It is argued, however, that a proposal for the abolishment of the doctrine of interspousal immunity was considered and rejected by the Indiana General Assembly, and that due to such action, the courts are bound to uphold the doctrine. This assertion is based upon an examination of the history of the enactment of IC 1971, 34-5-1-1, Rule 17 (d).

TR. 17(D) of the Indiana Rules of Procedure reads as follows:

> "Sex, marital and parental status. For the purposes of suing or being sued there shall be *no distinction* between men and women or between men and women because of marital or parental status; *provided, however, that this subsection (D) shall not apply to actions in tort.*" (our emphasis).

When the rule was originally proposed it did not contain the proviso which limits the applicability of the subsection to actions other than actions in tort. In its original form, it would have appeared to abrogate the doctrine of interspousal immunity. It is the act of amending the rule that counsel for defendant-appellee insists should be regarded as affirmative legislative intent to maintain the doctrine of interspousal immunity. We do not agree.

Notwithstanding the fact that TR. 17(D) is procedural rather than substantive, we do not believe that the refusal of the legislature to sanction the rule as originally proposed should be considered by this Court as anything more than *legislative awareness* of the judicially created doctrine of the common law. The proviso in TR. 17(D) does not purport to abolish tort actions between husband and wife. Rather it merely provides that if any distinction between husband and wife exists in tort actions, such distinction is not removed by the rule as adopted. The "distinction" which has existed up to the present is, of course, the common law doctrine of interspousal immunity which is, and always has been, subject to amendment, modification, or abrogation by this Court. TR. 17(D), therefore, provides no opposition to the course of action we pursue today.

Having heretofore determined that the reasoning advanced for retention of the doctrine is judicially unsound, and having found that no legislative barriers to such action exist, we hereby abrogate the common law doctrine of interspousal immunity. This approach completely reflects both the letter and the spirit of Art. 1, § 12 of the Constitution of the State of Indiana, which provides:

"All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

For all the foregoing reasons, the Petition for Transfer is granted and the cause remanded to the trial court with instructions to vacate and set aside its judgment and for further proceedings not inconsistent with this opinion.

Arterburn, C.J. and Givan, J., concur; DeBruler, J., concurs in result with opinion; Prentice, J., dissents.

### Opinion Concurring in Result

DeBruler, J.—I concur in the result in this case because it seems to me that the underlying rationale of the doctrine of interspousal immunity does not apply to the facts of this case in which the complaint was filed prior to the time when the plaintiff and the defendant were married. However, I decline to follow the majority in discarding this doctrine in all conceivable situations based on the facts before us in this case. It is my belief that in an area such as this, we ought to restrict ourselves to precise, foreseeable steps based on responses to specific situations.

Note.—Reported in 284 N. E. 2d 794.