**ALLSTATE INSURANCE COMPANY,**
**Plaintiff-Appellee,**

v.

**Cathy BOLES and Wilbur Boles,**
**Defendants-Appellants.**

**No. 585S198.**

Supreme Court of Indiana.

Aug. 23, 1985.

John F. Townsend, Jr., Townsend, Hovde, Townsend & Montross, Indianapolis, for defendants-appellants.

John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, for plaintiff-appellee.

PIVARNIK, Justice.

This cause comes to us on a certification of a question of state law from the United States Court of Appeals for the Seventh Circuit. This Court has jurisdiction to answer said certified question pursuant to Ind.R.App.P. 15(O).

Defendants-Appellants Wilbur Boles and Cathy Boles were married on December 10, 1972, and have resided together as husband and wife since that date. From September, 1981 until August, 1983 the defendants resided together near the City of Indianapolis, Indiana.

Plaintiff-Appellee, Allstate Insurance Company, issued Allstate Automobile Policy number 12913540 to Wilbur Boles, effective from August 10, 1981, through February 10, 1982. On November 12, 1981, Wilbur Boles, while operating his automobile covered in the Allstate policy, struck a pine tree lying in the road. Cathy Boles, a passenger at the time, suffered injuries to her person as a result of the collision.

On May 17, 1983, Cathy Boles filed a Complaint for Damages in the Marion Superior Court, Civil Division. In her complaint, she claimed permanent injuries, loss of income, and medical expenses, totalling fifty thousand ($50,000) dollars in damages.

On June 21, 1983, Allstate commenced a declaratory judgment action in the United States District Court for the Southern District of Indiana. An amended complaint was filed on June 24, 1983, in which Allstate sought five declarations. Allstate sought, first, a declaration that the Policy does not provide any coverage for any claims of Cathy Boles against Wilbur Boles arising out of the November 12th accident. Second, Allstate sought a declaration that the Policy does not provide any coverage based upon its uninsured motorist provisions for claims for injuries and losses arising out of the accident. Allstate also sought a declaration that it is not obligated under the Policy to defend, assist in defending or expend any money in defending Mr. Boles against the claims by Mrs. Boles arising out of the accident. The fourth declaration Allstate sought was that it is under no duty to compromise, settle or expend any money in attempting to compromise or to settle any claims asserted by Mrs. Boles against Mr. Boles arising out of the accident. Finally, Allstate sought a declaration that it is under no duty to pay or satisfy any judgment involving any claim asserted by Mrs. Boles against Mr. Boles for damages arising out of the accident.

On November 16, 1983, Allstate moved for summary judgment, by asserting the Policy exclusion against coverage for injuries sustained by persons related to the insured by blood, marriage, or adoption, residing in his household. Section I, Coverage AA of the Policy provides insurance coverage for liability for bodily injury arising out of the ownership, maintenance and use of an automobile. With respect to Coverage AA, the Policy clearly states as follows:

"SECTION I

LIABILITY PROTECTION

Automobile Liability Insurance
COVERAGE AA—Bodily Injury
COVERAGE BB—Property Damage
*Exclusions—what this Section of the policy does not cover*
This Section I does not apply to:

\* \* \* \* \* \*

7. bodily injury to any person who is related by blood, marriage, or adoption to an insured against whom claim is made if such person resides

in the same household as such insured;"

(emphasis in the original).

Allstate further asserted that Mrs. Boles' claims were not covered by the uninsured motorist provision of the Policy. In response, Mrs. Boles conceded that Mr. Boles was not an uninsured motorist, and did not contend that the uninsured motorist provisions of the Policy were involved in this action. However, Mrs. Boles asserted that the household exclusion provision of the Policy is against the public policy of the State of Indiana.

On July 5, 1984, the district court granted summary judgment for Allstate on all the issues of the amended complaint. *Allstate Insurance Co. v. Boles*, 587 F.Supp. 807 (S.D.Ind.1984). Mrs. Boles appealed the decision, renewing her argument that the household exclusion provision of the Policy is contrary to the public policy of the State of Indiana, as evidenced by statute and case law. The Seventh Circuit Court of Appeals found that there were no clear controlling precedents in the decisions of the Supreme Court of Indiana, nor any controlling statutes determining whether a household exclusion provision, at least when applied to preclude liability coverage of injuries sustained by the spouse of the insured, is contrary to the public policy of Indiana. Accordingly, the Seventh Circuit Court of Appeals certified the following question to this Court:

> "Is a household exclusion provision of an automobile liability insurance policy contrary to the public policy of Indiana, as expressed in statute or case law, when applied to preclude liability coverage of injuries sustained by the spouse of the insured?"

■ This Court is of the opinion that the insurance policy provision commonly referred to as the "household exclusion clause" does not contravene any public policy of Indiana, explicitly or implicitly expressed in case or statutory law. Accordingly, the household exclusion clause in insurance contracts are valid and enforceable such that it may preclude liability coverage of injuries sustained by the spouse of an insured.

■ Insurance companies are free to limit their liability in a manner not inconsistent with public policy as reflected by case or statutory law. *Evans v. Nat'l Life Acc. Ins. Co.*, (1984) Ind.App., 467 N.E.2d 1216, *reh. denied.* If a plainly expressed exception, exclusion or limitation in an insurance policy is not contrary to public policy, it is entitled to construction and enforcement as expressed. *Id.* The insured parties, involved in the suit which has given rise to the certification of the question now before us, argue the household exclusion clause contravenes public policy expressed, implicitly or explicitly, in *Brooks v. Robinson*, (1972) 259 Ind. 16, 284 N.E.2d 794 and three motor vehicle statutes. The motor vehicle statutes are as follows: the Uninsured Motorists Coverage Statute, Ind. Code § 27-7-5-2, *et seq.* (Burns Supp.1985); Liability Insurance Policies—Prohibitions—Exclusions from coverage as between spouses, Ind.Code § 27-1-13-7 (Burns Supp.1985); and the Safety—Responsibility and Driver Improvement Act., Ind.Code § 9-2-1-1, et seq. (Burns Repl.1980). However, as will be seen, the household exclusion clause does not contravene any public policy underlying the above stated law.

In *Brooks v. Robinson, supra,* this Court abrogated the common law doctrine of interspousal immunity in tort actions. Our rationale for doing so was that the public policy supporting interspousal immunity was no longer sound. In *Brooks*, we reviewed the two facets of public policy for which the doctrine of interspousal immunity was created. The first public policy concern was that tort actions between husband and wife would tend to disrupt the peace and harmony of the marriage; the second concern was that such actions would tend to promote fraud, collusion and trivial litigation. In rejecting both concerns as no longer overriding societal concerns to justify the retention of interspousal immunity, we noted the law had evolved to permit spouses to sue one another in

actions of ejectment, partition and contract. We determined an action in tort would disrupt the tranquility of the marital state to no greater degree than these other actions giving recognition to the overriding need for courts to consider spouses' rights. We also found that the argument that abrogation of interspousal immunity would promote fraud, collusion and trivial litigation was no longer sound policy for closing the courtroom doors to spouses and leaving "the injured to suffer his loss and the wrongdoer to escape his liability." *Id.* at 21, 284 N.E.2d at 796. We concluded as follows:

"To adopt such a view requires the blanket assumption that our court system is so ill-fitted to deal with such litigation that the only reasonable alternative to allowing husband-wife tort litigation is to summarily deny all relief to this class of litigants. It should be noted that this 'reasonable alternative' is absolutely contrary to the spirit of our legal system— namely, an injured party may seek redress for his injuries in our courts."

*Id.* at 21, 284 N.E.2d at 796–797.

However, our holding in *Brooks* dealt strictly with the right or ability of one spouse to sue the other in tort. It did not, in any manner, deal with the ability of a successful spouse to satisfy a judgment. We are now confronted with whether the right of a spouse to sue another spouse in tort should supercede the latter spouse's right to freely contract with an insurance company. We think not and agree with the following rationale stated by the Idaho Supreme Court in *Porter v. Farmers Insurance Co.,* (1981) 102 Idaho 132, 627 P.2d 311, when that Court was confronted with this same issue:

"The right to sue a spouse for injuries caused by that spouse is an entirely separate matter from the contractual obligation of an insurance company to pay for those injuries."

We finalized our opinion in *Brooks* by stating the abrogation of interspousal immunity reflects the letter and spirit of Article 1 § 12 of the Constitution of Indiana which provides:

"All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

In *Brooks* we first addressed the archaic nature of the public policy supporting the doctrine of interspousal immunity. Having found the public policy outdated, we abrogated the doctrine. We then indicated that the public policy supporting the abrogation of interspousal immunity was to allow a spouse the right to redress injury in a court of law, like any other injured party. Further, like any other injured party, the ability to recover from an insurer is limited by the coverage the defendant contracted for as stated in clear terms in the insurance contract. Accordingly, the household exclusion provision does not contravene any public policy underlying our decision in *Brooks.*

Whether the household exclusion clause is contrary to the Indiana Uninsured Motorist Statute, Ind.Code § 27–7–5–2, *et seq.,* was dealt with in *United Farm Bureau Mut. Ins. Co. v. Hanley,* (1977) 172 Ind. App. 329, 360 N.E.2d 247, *reh. denied.* The Court of Appeals held in *Hanley,* that the household exclusion clause did not violate the Uninsured Motorists Statute. In doing so, the Court of Appeals stated four reasons for its decision. First, the Court noted the long-standing judicial support of the clause along with the freedom of the parties to exclude risks from insurance contracts. Next, the Court recognized the presence of language in the Act that liability be subject to the terms and conditions of such coverage. Thirdly, the Court found the household exclusion clause was an exclusion to general liability instead of a restriction on insurance coverage which specifically limited or eliminated uninsured motorist protection. Finally, the Court found that the Legislature had remained silent in the Act with regard to nullification of the household exclusion clause when it

could have expressly provided that such clauses are not enforceable. We are in agreement with this rationale and further agree that the household exclusion clause does not violate the Uninsured Motorists Statute.

Ind.Code § 27-1-13-7, which is a statute governing liability insurance policies and which specifically addresses exclusions from coverage as between spouses, provides in pertinent part as follows:

"No such policy shall be issued or delivered in this state to the owner of a motor vehicle, by any domestic or foreign corporation, insurance underwriters, association or other insurer authorized to do business in this state, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, expressed or implied, of such owner. If a motor vehicle is owned jointly by a husband and wife, either spouse may, with the written consent of the other spouse, be excluded from coverage under the policy. A husband and wife may choose instead to have their liability covered under separate policies. A policy issued in violation of this section shall nevertheless, be held valid but be deemed to include the provisions required by this section, and when any provision in such policy or rider is in conflict with the provision required to be contained by this section, the rights, duties and obligations of the insurer, the policyholder and the injured person or persons shall be governed by the provisions of this section." Ind.Code § 27-1-13-7 (as amended, effective September 1, 1981).

The household exclusion provision does not contravene the public policy upon which this portion of the statute was enacted. This provision requiring liability insurance coverage for the owner for injuries caused by the operation of the vehicle by a permittee is restricted to requiring coverage for the owner's *vicarious* liability which might arise because of the permittee's negligent act. Only the owner's possible vicarious liability is required to be covered, and not the permittee's liability, or any direct negligence of the owner.

The 1981 amendment to Ind.Code § 27-1-13-7 added that a husband and wife may choose to be insured for liability under separate policies, or may choose to be excluded from their spouse's policy, in either case if written consent is obtained. This provision did not change the scope of coverage required by Ind.Code § 27-1-13-7, or the validity of the construction which prior Indiana cases have given to the statute and what insurance coverage was required. *Indiana Lumbermens Mutual Ins. Co. v. Vincel,* (1983) Ind.App., 452 N.E.2d 418, 423. The two sentences added by the 1981 amendment did not invalidate the household exclusion clause because the 1981 amendment deals strictly with spouses as the parties contracting for insurance and does not contemplate or affect the parties to whom the proceeds of the policy are directed. The household exclusion clause, to the contrary, addresses exclusively who may not recover under the insurance policy. The only coverage required by Ind. Code § 27-1-13-7 is the owner's vicarious liability for the acts of a permittee. The statute does not require the automobile owner's negligence to be covered, nor does it require the permittee's negligence to be covered. It follows that Ind.Code § 27-1-13-7, by mandating an automobile owner to be insured for vicarious liability is not based on any public policy contravened by the household exclusion clause.

Finally, the Safety-Responsibility and Driver Improvement Act, Ind.Code § 9-2-1-1, *et seq.,* does not, explicitly or implicitly, represent any public policy antithetical to the household exclusion clause. The pertinent section of Ind.Code § 9-2-1-1, *et seq.,* reads as follows:

"(a) The commissioner shall require, ... from any person who, while operating any motor vehicle ... shall have been involved in any motor vehicle accident

resulting in bodily injury or death ... or, in the discretion of the commissioner, from the person in whose name the motor vehicle is registered, or both, *security* sufficient .... to indemnify the injured party against loss.... If the owner or operator shall satisfy the commissioner that the liability, if any, for damages resulting from the accident is insured by an insurance policy or bond, or the liability is released, the commissioner shall not require *security* from the owner or operator.

(b) The *security* ... shall be in such amount as the commissioner may require, but in no case in excess of the amount of proof required by I.C. § 9–2–1–15....

(c) If the person ... required to furnish the *security* ... neglects or refuses to comply ... the commissioner shall suspend his current driving license and the registration of every motor vehicle owned by him ...

(h) Where bodily injury to, or death of, any person, or damage to property in an amount apparently exceeding two hundred dollars ($200) results from an accident in which a motor vehicle is in any manner, directly or indirectly involved, all motor vehicle operating privileges of the operator of the vehicle involved, shall stand suspended by operation of law on the ninetieth (90th) day following the date of the accident, unless prior to the ninetieth (90th) day, the operator has deposited *security* ..." (emphasis supplied).

The primary purpose, as indicated by the security requirements of these provisions of the Act is to facilitate loss recovery by auto accident victims. However, the Act is not a compulsory insurance statute as evidenced by the provision allowing alternative means of proving financial responsibility. Ind.Code § 9–2–1–11. Where insurance is the means chosen by the automobile owner to comply with this statute, the statute requires liability coverage sufficient to indemnify any person injured in an auto accident and specifies the minimum amounts of insurance coverage. Clearly,

the purpose of the Act is not to require an automobile owner to be insured for personal injury sustained by himself, rather it is to require insurance for liability for injuries sustained by others. Household members as defined by the household exclusion clause, typically are frequent drivers of the car owned by the named insured. Consequently, liability insurance issued to the automobile owner typically includes coverage such that household members are insured as if they were the automobile owner. The household exclusion clause merely provides that those treated as the insured under the policy may not also recover as victims under it. We fail to see in what sense the household exclusion clause contravenes public policy implicit in Ind.Code § 9–2–1–1 et seq., when the Act only requires liability insurance for injuries sustained by persons other than the insured and when the Act does not mandate insurance be the means of proving financial responsibility.

 Whenever a court considers invalidating a contract on public policy grounds, it must always weigh in the balance the parties' freedom to contract. Although special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and the insured's, if a contract is clear and unambiguous, the language therein must be given its plain meaning. *Vernon Fire and Casualty Co. v. American Underwriters, Inc.*, (1976) 171 Ind. App. 309, 356 N.E.2d 693. The household exclusion clause is clear and unambiguous. Further, as seen in our analysis, it does not contravene public policy reflected in our case law or motor vehicle statutes. Accordingly, our answer to the certified question is that a household exclusion provision of an automobile insurance policy is not contrary to public policy of Indiana, as expressed in statute or case law, when applied to preclude liability coverage of injuries sustained by the spouse of an insured.

The Clerk of this Court is directed to certify copies of this Opinion to Judges

William J. Bauer, Richard D. Cudahy, and Thomas E. Fairchild of the United States Court of Appeals for the Seventh Circuit. The certified question answered, this cause is remanded to the United States Court of Appeals for further proceedings.

GIVAN, C.J., and PRENTICE, J., concur.

DeBRULER, J., dissents with separate opinion.

HUNTER, J., not participating.

DeBRULER, Justice, dissenting.

The facts giving rise to the underlying claim are that Cathy Boles, wife of Wilbur Boles, was injured in 1981, while a passenger in their car insured by Allstate Insurance Company. He was driving when the car struck a tree in the roadway. She sued him. Allstate sued for declaration of its duties under the policy. The policy expressly excluded coverage for bodily injury to persons such as Cathy Boles because she was married to and residing with the person against whom she was making claim.

Cathy Boles, appellant, contends that the household exclusion provision limiting general automobile liability coverage is unenforceable in her situation by public policy which is to be found in the framework of the law represented by this court's opinion in *Brooks v. Robinson* (1972), 259 Ind. 16, 284 N.E.2d 794, in which this court abrogated interspousal tort immunity; I.C. § 27–1–13–7, a provision of the Indiana Insurance Law; and the Indiana Motor Vehicle Safety-Responsibility and Driver Improvement Act, I.C. § 9–2–1–1, et seq. Appellee Allstate Insurance Company takes the position that no such restrictive public policy is expressed or implied within these three sources of law, and therefore its household exclusion provision is valid and enforceable.

Guided by the rules governing judicial application and interpretations of legislative enactments, including (1) ascertainment and effectuation of legislative intent, (2) adherence to clear language, (3) prevention of irrational result or results contrary to legislative intent, and (4) judicial restraints, *Dague v. Piper Aircraft Corp.* (1981), Ind., 418 N.E.2d 207, I have examined the last-cited source of law, namely the Safety-Responsibility Act, and have concluded that its provisions and the legislative intent they reflect, are decisive in resolving the question presented. The act as a whole, according to the Attorney General, ".... is predicated upon a state policy to facilitate recovery for loss suffered because of the negligent operation of motor vehicles by others." A.G., 1944, Op. No. 8, p. 22. According to this view, loss recovery serves state interests and loss recovery will be more successful through the mechanisms created in the act. Appellee Allstate, with substantial support from cases of the Court of Appeals, including *Green v. State Farm Mutual Automobile Ins. Co.* (1976), 168 Ind. 434, 343 N.E.2d 828, holds to a narrower view, which is basic to its legal position. Such view is that the mechanisms in the statute do not "apply" until an accident occurs, and facilitate no recovery for losses resulting in such first accident, but only those resulting from second or subsequent accidents.

I.C. § 9–2–1–4, a provision of the act, which we now read and interpret for the first time, does not support the restricted view taken by Appellee Allstate and clearly by implication demonstrates a public policy antithetical to this household exclusion clause and its restriction upon public liability coverage. When this provision is read, keeping the "security" requirement in the forefront as a guiding beacon, as demonstrated in that part of the act set out in the last part of the majority opinion, it is beyond argument that a primary purpose of these provisions of the act is to facilitate loss recovery by auto accident victims of, for want of a better expression, first and immediate past accidents, as well as second or future accidents. This purpose is evident in the "security" requirements. And while the mechanisms in the act are not the equivalent of a compulsory insurance system in the strictest sense, they are nevertheless operative at all times upon owners and drivers, so as to exact obedience, even before any accident. That is, through the threat of the loss of driving privileges and auto registration, it enjoins drivers and owners to be in a constant state of prepar-

edness to satisfy security requirements. Where, insurance is the means chosen by the driver or owner to reach the state of preparedness which is a primary legislative goal, a specific form of private contracting behavior is required, namely that which results in an insurance contract having liability coverage sufficient to indemnify "any person" injured in an auto accident, I.C. § 9–2–1–4(h) and an amount of such coverage up to the minimum set by I.C. § 9–2–1–15. From this restriction, a restriction of the personal autonomy of the contracting parties, including insurance companies such as Appellee is necessarily to be implied. To ignore that implied provision would fly in the face of a clear legislative intent and purpose. That we may not do. *Dague, supra.*

The legislative intent operating through the mechanism surrounding security requirements, with its goal to render loss recovery more successful, would have little vitality, if the insurance industry is free to sell basic and primary automobile policies in which the liability coverage is not general and commensurate with the scope of legal liability or up to minimum amounts. I would hold that the household exclusion clause is inoperative in the instance of the Boles claim, as repugnant to the public policy of the Safety-Responsibility Act.