19540

J. C. SMOAK and Dalton L. Truluck, as Administrators of the Estate of Arnold Ray Smoak, Respondents, v. SEABOARD COAST LINE RAILROAD COMPANY, Appellant.

(193 S. E. (2d) 594)

*Robert M. Erwin, J., Esq.,* of *Burns, McDonald, Bradford, Erwin and Few,* Greenwood, *for Appellant,*

*Messrs. Murdaugh, Eltzroth & Peters,* of Hampton, *for Respondents,*

December 14, 1972.

LITTLEJOHN, Justice:

This common law action for wrongful death arises as a result of a railroad grade crossing collision involving a pickup truck and a freight train. The plaintiff's intestate was riding as a passenger in the cab of the truck when the collision occured. We are called upon to determine if the intestate was guilty, as a matter of law, of contributory negligence, gross negligence, willfulness and wantonness, so as to bar recovery. Incidental to the verdict for $75,000 actual damages and $25,000 punitive damages, the issue of excessive damages is raised. We must also examine a witness' unresponsive answers to determine if a mistrial should have been granted.

At appropriate stages of the trial, motions for nonsuit, for directed verdict, and for judgment *non obstante veredicto* were made and denied. All motions were grounded on the proposition that that intestate was, as a matter of law, guilty of contributory negligence, gross negligence, willfulness and wantonness. The first question we decide is whether the intestate was guilty of such as a matter of law.

A ruling upon this question requires us to review the evidence for the purposes of determining whether it is susceptible of more than one reasonable inference. For the purpose of our review, the evidence must be considered in the light most favorable to the plaintiff's. *Gillespie v. Ford et al.*, 225 S. C. 104, 81 S. E. (2d) 44 (1954). The intestate was a passenger in a pickup truck, owned and operated by his brother, Norris Smoak, when it collided with a freight train, owned and operated by the defendant. Another

brother James Smoak, and Henry McMillan were also passengers. James Smoak was also killed in the collision. They were returning to their homes in Colleton County from a construction job in Beaufort County, by way of a shortcut suggested by James Smoak. Both the driver and the intestate were unfamiliar with the road which they were traveling. The collision occurred late in the afternoon, when it was daylight and visibility was good. The terrain was level; it was in a rual area; and the road was straight. The train was approaching the crossing from the pickup driver's right. There is evidence that the driver of the pickup slammed on his brakes and skidded 177 feet before reaching the point of impact. Defense witness Rolf Roley, a professional engineer and reconstruction expert, testified that in his opinion the pickup was traveling approximately 60 miles per hour prior to applying brakes, and that the train was traveling at approximately 20 miles per hour at the instant of impact. He testified that in his opinion the driver of the pickup was approximately 312 feet from the crossing at the time he perceived the presence of an oncoming train. He estimated that the train would have been 165 feet from the crossing when the pickup was 310 feet away. There is testimony that the pickup driver's visibility was greatly hampered by undergrowth around the intersection. There is testimony that the train gave no signal when approaching the intersection. Photographs show a highway railroad sign approximately 500 feet from the crossing and a railroad crossbuck sign at the crossing. The driver testified that he was traveling about 55 miles per hour and slowed down when he saw the highway railroad sign.

On this appeal, there is no contention that the evidence does not support the inference that the defendant railroad company failed to use due care. The sole contention as relates to the issue of liability, is that recovery is barred because the intestate did not use due care for his own safety. Inasmuch as this action is one at common law and not based on any statutory law, the delicts of the driver can-

not be imputed to the plaintiff's intestate. On the issue of contributory negligence, gross negligence, willfulness and wantonness, the burden of proof rests upon the defendant, which alleged it. It is therefore encumbent upon the defendant, if it would prevail as a matter of law, to prove to the exclusion of all other reasonable inferences that the intestate did do some act, or failed to take some action just before the collision, amounting to negligence, gross negligence, willfulness or wantonness, and that such contributed to the collision and the ensuing death as a proximate cause thereof. The lower court in effect held that the evidence was susceptible of more than one reasonable inference and that a jury issue was presented. We agree.

Four persons were riding in the pickup. Two of them were killed. It thus seems that the defendant must basically rely upon the testimony of Norris Smoak, the driver, and Henry McMillan, another passenger, to establish what the intestate did or did not do prior to the collision. The defendant may, of course, rely upon circumstantial evidence, which in this case is of little assistance.

The law imposes certain duties on a driver and imposes certain duties on a passenger. Those duties are greatly different. Each is expected to conduct himself as a reasonably prudent person would conduct himself under the circumstances. It cannot be said that a passenger is always negligent if he reads a magazine or stares at farm operations, or turns around when seated in the front seat to converse with passengers in the rear. Prudent passengers often do these things. On the other hand, if a driver turns around to converse with passengers in the rear, or reads a magazine, or stares at farm operations, it can be safely said that he would normally be conducting himself as a prudent driver should not. On the other hand, circumstances may arise which require that a prudent passenger affix his attention to the road just as the driver should. We think that the defendant has failed to fulfill the affirmative burden of proving, as a matter of law, that the intestate had a duty to be on

the alert for a train. There is evidence which, if believed, proves that the train whistle was not blowing and the bell was not ringing. There is evidence that visibility was greatly hampered. There is no evidence to indicate that the intestate was conscious of the existance of the train or the crossing, or that he saw either of the two signs. The road was level and straight. So far as the record shows, the intestate had no reason to believe that the driver was incompetent. There is evidence that the deceased did not give warning to the driver, but we cannot say as a matter of law under all of the circumstances, that he was required to give a warning. It is inferable that the driver applied his brakes as soon as he perceived the danger. It is the argument of the defendant that the intestate should have preceived the danger before the driver did, and should have given warning. Any warning given after the driver himself perceived the danger would have served no purpose. The duty imposed upon a passenger is created by either known dangers or perils that the attendant circumstances reasonably suggest. *Funderburk v. Powell,* 181 S. C. 412, 187 S. E. 742 (1936). The record is absent a showing that the intestate knew of the danger created by the railroad crossing and the approaching train, and absent a showing of attendant circumstances indicating that perils were suggested to the deceased. At least, the evidence is susceptible of more than one reasonable inference; and certainly, the defendant has not established as a matter of law that the evidence was so clear and uncontradicted as to warrant the judge's taking the case from the jury.

An excellent discussion of the duties of a passenger injured in a collision is found in *Funderburk v. Powell, supra.* Therein, this Court said:

"The standard of care to be observed and exercised by the occupant is of course ordinary care under the circumstances. It cannot be said, however, that in every case and under all circumstances it is the duty of an occupant of a motor vehicle to use his senses in order to discover approaching vehicles or

other dangers, or that his failure to do so would be negligence."

The exceptions cannot be sustained.

The defendant contends the verdict was so excessive as to indicate that it was the result of caprice, passion or prejudice on the part of the jury, and further contends that it was error not to grant the motion for a new trial.

This Court will reverse the refusal of a motion for a new trial on the contention that a verdict is excessive only when the verdict is so grossly excessive as to shock the conscience of the court. *Norton v. Ewaskio,* 241 S. C. 557, 129 S. E. (2d) 517 (1963). "A verdict which may be supported by any rational view of the evidence and bears a reasonable relationship to the character and extent of the injury and damage sustained, is not excessive." *Young v. Warr,* 252 S. C. 179, 165 S. E. (2d) 797 (1969). We have recognized that not only must circumstances peculiar to each case be considered in determining the amount to be awarded for damages, but we have long recognized that past verdicts for similar injuries may be compared but are not controlling. *Cabler v. Hart,* 251 S. C. 576, 164 S. E. (2d) 574 (1968). A comparison of today's verdict to those of yesterday is of only minimal value. Money represents buying power. A verdict which was excessive when a carpenter earned forty cents an hour might not be excessive today, when a carpenter earns three or four dollars an hour. A verdict given when beans were seventeen cents a can, would not represent the same considerations as when beans are thirty-seven cents a can. In determining whether a verdict is excessive, the buying power of the verdict involved must be considered. *Cabler v. Hart, supra.* Money is not what it used to be. Adequacy, inadequacy, and excessiveness must be thought of in connection with buying power.

In 1955, this Court held that a verdict awarding $50,000 actual damages, plus $15,000 punitive damages to a father for the death of his twelve year old

son was not excessive. *Mock v. Atlantic Coast Line Railroad Co.,* 227 S. C. 245, 87 S. E. (2d) 830 (1955). Plaintiff's intestate was 18 years of age at the time of his death. He was employed, earning $2.25 per hour, and contributed to the support of his mother and father, on whose behalf this action is brought and with whom he resided. There is evidence that the parents experienced mental shock, suffering, wounded feelings, grief, sorrow, and loss of comfort and society of the deceased, which are proper elements for consideration by the jury in this type case. In 1972, the award of $75,000 actual damages for the wrongful death of an eighteen year old son cannot be deemed unreasonable. When it is realized that there is evidence warranting the conclusion that the railroad company was willful and wanton, there can be no serious argument that the punitive damages as such are excessive, nor does such an award for punitive damages indicate prejudice or caprice.

The defendant's final exception concerns unresponsive answers given by plaintiff's witness on cross-examination. The testimony was to the effect that since the railroad put up a stop sign and cut back the right-of-way, there had not been an accident at the crossing. The court sustained the objection to the testimony, overruled the motion for a mistrial, and instructed the jury to "disregard the remarks of the witness made in response to the last question in their entirety."

The defendant submits that the prejudice to it as a result of the testimony, compounded by the court's instructions, required a mistrial. We cannot agree.

The answers cannot be attributed to counsel for plaintiff's or to the plaintiff's. They were spontaneous answers from one not accustomed to testifying. The defendant is not entitled to a perfect trial, but only a fair trial. Hardly any case is completed with out some flaw. If a new trial was required every time a flaw or mere possibility of prejudice occurred, litigation would be unduly prolonged. Our Court has held many times that such matters are basically for sound discretion of the trial judge.

We do not think the unfortunate response was of such magnitude that we could say the trial judge was in error in refusing a motion for mistrial; we think he properly cured the error with his timely instruction to the jury.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.