William G. **HAYDEN** and Letitia J. Hayden, Appellants–Plaintiffs,

v.

**UNIVERSITY OF NOTRE DAME,** Appellee–Defendant.

No. 71A03–9812–CV–519.

Court of Appeals of Indiana.

Sept. 28, 1999.

Rehearing Denied Nov. 17, 1999.

John D. Ulmer, Bodie J. Stegelmann, Yoder, Ainlay, Ulmer & Buckingham, L.L.P., Goshen, Indiana, Attorneys for Appellant.

William P. Hoye, Jill R. Bodensteiner, University of Notre Dame, Notre Dame, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

William and Letitia Hayden appeal from the trial court's grant of the University of Notre Dame's (Notre Dame) motion for summary judgment, presenting one issue for review:

> Whether the trial court erred in concluding that Notre Dame did not owe a duty to Letitia Hayden to protect her from the criminal acts of a third party.

We reverse.

### FACTS AND PROCEDURAL HISTORY

On September 16, 1995, William and Letitia Hayden attended a football game on the Notre Dame campus. They were season ticket holders and sat in their assigned seats, which were in the south endzone behind the goalpost. During the second quarter of the game, one of the teams kicked the football toward the goal. The net behind the goalposts did not catch the ball, and it landed in the stands close to Letitia Hayden's seat. Several people from the crowd lunged for the ball in an effort to retrieve it for a souvenir. One of them struck Letitia Hayden from behind, knocking her down and causing an injury to her shoulder.

The Haydens brought suit against Notre Dame for failing to exercise care to protect Letitia Hayden. Notre Dame moved for summary judgment, arguing that it did not have a legal duty to protect Letitia Hayden from the intentional criminal acts of an unknown third person. The trial court granted Notre Dame's motion. The Haydens now appeal.

## DISCUSSION AND DECISION

◼ Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Schrum v. Moskaluk*, 655 N.E.2d 561, 563–64 (Ind.Ct.App.1995).

◼ When reviewing a motion for summary judgment, this court applies the same standard utilized by the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933 (Ind.Ct.App.1996). We will affirm a trial court's grant of summary judgment if it is sustainable on any theory found in the evidence designated to the trial court. *Id.*

◼ When the movant's affidavits and other evidence demonstrate the lack of a genuine issue, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial. *Carroll v. Jagoe Homes, Inc.*, 677 N.E.2d 612, 614 (Ind.Ct.App.1997). The non-moving party may not rest on the pleadings, but must set forth specific facts that show there is a genuine issue of material fact for trial. *Clark v. Estate of Slavens*, 687 N.E.2d 246, 248 (Ind.Ct.App.1997). A defendant in a negligence action may obtain summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense. *Hapner v. State*, 699 N.E.2d 1200, 1203 (Ind.Ct.App.1998).

◼ The Haydens claim that Notre Dame was negligent in failing to protect Letitia Hayden. In order to prevail on a claim of negligence, a plaintiff must prove:

(1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach. *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct. App.1994), *trans. denied* (1995). The only element at issue here is whether Notre Dame owed Letitia Hayden a duty under the circumstances. Whether a duty exists is generally a question of law for the court to determine. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991).

◼ The Haydens argue that this case is governed by premises liability principles and that the relevant standard of care is determined by Letitia Hayden's status as an invitee. *See Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind.1991) (reaffirming reliance on common law classifications in premises liability cases). The parties do not dispute that Letitia Hayden was a business invitee of Notre Dame. Nonetheless, Notre Dame argues that it owed no duty to protect Letitia Hayden from a third party's criminal act.[1] It contends that the third party's action was unforeseeable, and that it therefore owed no duty to anticipate it and protect Letitia Hayden, a business invitee.

Our supreme court recently decided several cases which articulated the test for determining when a landowner's duty to its invitees extends to protecting them against the criminal actions of third parties that occur on its land. In *Delta Tau Delta v. Johnson*, 712 N.E.2d 968 (Ind.1999), the court adopted a "totality of the circumstances" test for determining when such a duty arises. This test "requires landowners to take reasonable precautions to prevent foreseeable criminal actions against invitees." *Id.* at 973. The court explained that, "[u]nder the totality of the circumstances test, a court considers all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar inci-

---

1. For purposes of this appeal, we assume that the unknown third party's actions in lunging for the football and knocking Letitia Hayden down constitute a criminal act.

dents, to determine whether a criminal act was foreseeable." *Id.* at 972. "A substantial factor in the determination is the number, nature, and location of prior similar incidents, but the lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable." *Id.* at 973.

Applying the totality of the circumstances test in the case before it, the court held that the defendant-fraternity owed a duty to the plaintiff, a young woman who attended a party at the fraternity house, to take reasonable precautions to protect her from sexual assault by third parties on its premises. *Id.* at 973. The court looked at prior incidents of assault and forced alcohol consumption, as well as the fraternity's awareness of the prevalence of date rape (especially involving fraternity members) and of legal action taken against other fraternities for sexual assault, and concluded that under these circumstances such a duty existed.

In *Vernon v. Kroger Co.*, 712 N.E.2d 976 (Ind.1999), the court applied the same test to the case of a plaintiff who was beaten on the defendant's store premises by a shoplifter attempting to flee. The plaintiff was attempting to exit the store's parking lot when he inadvertently blocked the vehicle of the fleeing shoplifter. The shoplifter pulled the plaintiff from his vehicle and beat him. The court noted that shoplifting at the store was not an unusual occurrence, that many shoplifters attempted to flee in waiting cars, that some shoplifters used force to escape, that criminal occurrences had happened in the parking lot, and that in the two years prior to this event, the police had made numerous runs to the store for crimes of violence and an increasing number of runs for battery and shoplifting. Based on the totality of the circumstances, the court held that the defendant owed the plaintiff a duty to protect him from the criminal acts of the third party-shoplifter.

Finally, in *L.W. v. Western Golf Ass'n*, 712 N.E.2d 983 (Ind.1999), the court faced the issue of a landowner's duty for the criminal acts of a third party in the context of another sexual assault. In *L.W.*, a female student was raped by a male student in a co-educational residence hall owned by the defendant. Based on the totality of the circumstances, the court held that the defendant did not owe the plaintiff a duty. While the evidence showed a few pranks or childish behavior, there was no evidence of prior violent acts or sexual assaults at the residence hall. There was also no indication that the rapist would commit such a crime. *Id.* at 985.

Applying this test to the case before us, we find that the totality of the circumstances establishes that Notre Dame should have foreseen that injury would likely result from the actions of a third party in lunging for the football after it landed in the seating area. As a result, it owed a duty to Letitia Hayden to protect her from such injury. The Haydens were seated in Notre Dame's stadium to watch a football game. Notre Dame well understands and benefits from the enthusiasm of the fans of its football team. It is just such enthusiasm that drives some spectators to attempt to retrieve a football to keep as a souvenir. There was evidence that there were many prior incidents of people being jostled or injured by efforts of fans to retrieve the ball. Letitia Hayden testified that she and her husband had attended Notre Dame football games for many years, and that she witnessed footballs land in the seating area around her many times. On numerous occasions, she saw people jump to get the ball. She testified that she witnessed another woman injured a number of years earlier when people in the crowd attempted to retrieve a football, and that she was knocked off her seat earlier in the game by crowd members attempting to retrieve the ball prior to the incident in which she was injured.

William Hayden testified that the net behind the goalpost caught the ball only about fifty percent of the time that it was kicked. The other half of the time, the ball would fall in the seating area around his seat, and people would try desperately to retrieve the ball. He stated that a few years prior to this incident, he had been knocked off his feet and thrown into the next row by fans eager to retrieve a football, and that he had been jostled a number of times. He stated that Notre Dame ushers witnessed fans being jostled in scrambles for the ball, but did not make aggressive attempts to recover the balls. He testified that in prior years, student managers, who were Notre Dame employees, would aggressively attempt to retrieve balls from fans and were usually successful in returning the balls to the playing field. The managers, however, no longer tried to retrieve the balls and stayed on the playing field.

Based on the totality of the circumstances, we hold that Notre Dame owed Letitia Hayden a duty to take reasonable steps to protect her from injury due to the actions of other fans in attempting to retrieve footballs which land in the seating area. The trial court erred in finding that no duty existed and entering summary judgment in favor of Notre Dame.

Reversed.

GARRARD, J., and NAJAM, J., concur.