**Barry DURHAM and Bill Wade, on behalf of the Estate of Kathy Wade, and Barry Durham as natural guardian for Amy Durham and Jason Durham, and Bill Wade, individually, Appellants–Plaintiffs,**

v.

**U–HAUL INTERNATIONAL, et al., Appellees–Defendants.**

**No. 49A02–9811–CV–940.**

Court of Appeals of Indiana.

Jan. 13, 2000.

Scott A. Benkie, Benkie & Crawford, Indianapolis, Indiana, Attorney for Appellant.

Rodney V. Taylor, Christopher & Taylor, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge

The Estate of Kathy Wade appeals the trial court's partial summary judgment denying punitive damages in the estate's wrongful death action against U–Haul International, Inc. and the other defendants. The defendants cross-appeal the portion of the judgment allowing Bill Wade's loss of consortium action to go forward, including the punitive damages claim in that action. The appeal and cross-appeal present two issues:

I. Whether the estate is entitled to pursue a punitive damages claim in its wrongful death action; and

II. Whether the spouse of the decedent (Bill Wade) is entitled to pursue his action for loss of consortium, including his punitive damages claim.

We reverse the trial court's judgment regarding the estate's punitive damages claim, and affirm the judgment regarding Bill Wade's claims.

### FACTS AND PROCEDURAL HISTORY

On a summer afternoon in 1995, Kathy Wade was riding in a car through a con-

struction zone on Interstate 74. Behind Wade's car was a U–Haul truck and trailer. Suddenly, the U–Haul driver lost control and crashed into the back of Wade's car. The crash impact hurled the car toward oncoming highway traffic, straight into a truck. Wade died before rescue teams could arrive. Wade's husband, Bill, and her estate filed a complaint against U–Haul, alleging that U–Haul was grossly negligent in maintaining its rental vehicles. The plaintiffs also named the highway construction firms as defendants, alleging that the firms were grossly negligent in organizing the construction zone. Both plaintiffs seek punitive damages, but they base their claims on separate liability theories: the estate asserts a wrongful death claim, while the husband asserts a loss of consortium claim.

One of the construction defendants moved for partial summary judgment on the husband's loss of consortium claim and on both plaintiffs' punitive damages claims. Several other defendants, including U–Haul, joined in the motion. The trial court granted the motion in part and denied it in part, finding:

> "(1) That the [husband's] claim for loss of consortium may proceed including claim for punitive damages and therefore defendant's motions are overruled.
> (2) The estate of Kathy Wade cannot recover punitive damages under the Wrongful Death Statute [IC 34–23–1–1]."

*Record* at 392.

The estate appeals the trial court's judgment denying its punitive damages claim. The defendants cross-appeal the portion of the judgment that allowed the husband's claims to proceed.

## DISCUSSION

### A. Punitive Damages in a Wrongful Death Action

#### 1. Summary judgment standard

■ In a summary judgment appeal, this court applies the same standard as the trial court. *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied.* Accordingly, this court examines the evidentiary submissions, determines whether there are any genuine issues of material fact, and decides whether the moving party is entitled to summary judgment as a matter of law. Ind. Trial Rule 56(C). In this appeal and cross-appeal the factual issues are not in dispute. Rather, the appeals turn on legal issues concerning punitive damages. As such, we consider only whether the trial court erred in its application of the law to the plaintiffs' claims.

#### 2. Parties' arguments

The plaintiffs contend that punitive damages should be recoverable under the Indiana Wrongful Death statute, IC 34–23–1–1 (formerly codified as IC 34–1–1–2). The plaintiffs point out that punitive damages are available in personal injury actions, and argue that such damages should be available in wrongful death actions in order to maintain "symmetry and integrity" in the tort system. *Appellant's Brief* at 3. In other words, the plaintiffs contend that a defendant in a wrongful death action should face the same risk as a defendant in a personal injury action. Without liability for punitive damages, a wrongful death defendant has less litigation risk than a personal injury defendant. This imbalance in risk is illogical, according to the plaintiffs, and as such they conclude that punitive damages should be available in wrongful death actions.

In response, the defendants assert that Indiana precedent precludes punitive damages in wrongful death actions. The defendants cite several cases in support of this maxim. The plaintiffs counter that none of these cases are binding upon this court.

#### 3. Statutory Law

The early common law had no remedy for wrongful death. *See* STUART M. SPEIS-

ER ET AL., RECOVERY FOR WRONGFUL DEATH AND INJURY § 1.1 (1992). To rectify the common law, England in 1846 adopted a wrongful death statute that authorized personal representatives to sue for losses incurred by the families of persons killed in accidents. *Id.* at § 1.8 (Lord Campbell's Act, 9 & 10 Vict. Ch. 93 (Eng.)). Every state in America recognized the propriety of the English statute and adopted its own version of the wrongful death act. *Id.*, Appendix A (collecting statutes). Indiana has three wrongful death statutes, each pertaining to a different class of decedents and each containing different descriptions of recoverable damages.

The plaintiffs in this case bring their action under Indiana's general wrongful death statute, IC 34–23–1–1. The statute authorizes the personal representative of a decedent's estate to bring an action on behalf of the decedent's family, among others. The damages language in the statute is inexact, perhaps because the statute evolved from Indiana's first wrongful death law adopted in the mid–1800s. In this appeal we must determine whether the inexact language in the general wrongful death statute allows recovery of punitive damages.

The statute has never expressly precluded punitive damages. When first adopted, the statute limited all damages by a monetary cap. *See generally Wiersma Trucking v. Pfaff,* 643 N.E.2d 909, 911 (Ind.Ct. App.1994) *adopted on trans.,* 678 N.E.2d 110 (Ind.1997) (reviewing development of Indiana Wrongful Death Statute and listing historical statutory citations). The legislature amended the statute several times between 1880 and 1965 but always maintained the cap concept; only the amount of the cap changed. In 1965, however, the legislature abandoned the cap, replacing it with the broad provision that controls damages in general wrongful death actions today:

"the damages shall be in such an amount as may be determined by the court or jury, including, *but not limited to,* reasonable medical, hospital, funeral and burial expenses, and lost earning[s]."

IC 34–23–1–1 (emphasis added).

The breadth of this damages provision becomes even more apparent when compared to the provisions of Indiana's other two wrongful death statutes. The statute governing the wrongful death of children contains an exclusive list of the damages recoverable by the child's parents or guardians. IC 34–23–2–1(e). Punitive damages are not in the list, so are not recoverable. Nor are punitive damages recoverable under Indiana's third and newest wrongful death statute—an act effective January 1, 2000 allowing wrongful death actions on behalf of non-dependent survivors of unmarried adults, i.e., parents of adult decedents, or adult offspring of decedents. The new act expressly precludes punitive damages. 1999 Ind. Acts 413, IC 34–23–1–2(c)(2).

▮ The careful attention given to the damages provision in the newest statute indicates that our legislators are mindful of the utility of precision in damages clauses. At the time they adopted the new statute, the legislators readily could have revised the general statute to clarify its damages provision.[1] As it stands, the damages provision could reasonably be interpreted to allow punitive damages. By preserving the broad damages provision in the general wrongful death statute, the legislature has charged the courts with the responsibility for construing the provision. When a statute is susceptible to more than one interpretation, the courts must clarify the ambiguity by construing the statute. *Amoco Production Co. v. Laird,* 622 N.E.2d 912, 915 (Ind.1993). U–Haul and the other defendants argue that we must strictly construe the provision because it is in derogation of the common law. Al-

---

1. This court highlighted the utility of such a revision in *Forte v. Connerwood Healthcare,* *Inc.,* 702 N.E.2d 1108, 1111 n. 3 (Ind.Ct.App. 1998) *trans. granted* 714 N.E.2d 172 (1999).

though the defendants' recitation of the strict construction rule is accurate, the rule does not necessarily require exclusion of punitive damages in wrongful death actions. The strict construction rule requires us to "presume that the legislature did not intend to make any change in the common law beyond those declared either in express terms *or by unmistakable implication." South Bend Community Schools Corp. v. Widawski,* 622 N.E.2d 160, 162 (Ind.1993) (emphasis added).

To interpret the phrase "including, but not limited to" as a preclusion on all damages other than those listed would be to ignore the unmistakable implication of the phrase. Had the legislature intended to limit wrongful death damages to the aspects enumerated in the statute, the legislature would not have used the phrase "including, but not limited to." We cannot use the guise of the strict construction rule to ignore the legislature's clear intent to allow damages other than those listed in the statute. Rather, we must construe the provision to effectuate the legislature's intent. *Sullivan v. Day,* 681 N.E.2d 713, 717 (Ind.1997).

Further, the damages provision is a relatively new amendment to the 150 year-old wrongful death statute. *Compare* Ind. Code Ann. § 2–404 (Burns 1946) and Ind. Code Ann. § 2–404 (Burns 1967). Although the original statute was a departure from the common law, by the time the legislature adopted the damages provision the action for wrongful death had been firmly established in our tort system for nearly a century. Given the timespan since the original departure from the common law, and the unmistakable intent of the phrase "including but not limited to," we find that the strict construction rule does not necessarily close the punitive damages issue.[2]

Absent a conclusive rule, we look to analogous statutes for direction in interpreting the wrongful death provision. One closely analogous statute is Indiana's survivor act, IC 34–9–3–4. Like the wrongful death act, the survivor act provides a remedy for families of individuals who have died. Unlike the wrongful death act, however, the survivor act deals with individuals who are injured by a tort but die from causes other than the tortious conduct.[3] This court explained the survivor act as it relates to punitive damages in *Foster v. Evergreen Healthcare, Inc.,* 716 N.E.2d 19 (Ind.Ct.App.1999). In *Foster,* the plaintiff sued a nursing home for personal injuries resulting from the nursing home's negligence, seeking punitive damages. Before the suit was resolved, the plaintiff died from unrelated maladies. The nursing home sought summary judgment, arguing that the punitive damages claim did not survive the plaintiffs' death. We rejected the argument, explaining that the survivor act allows a decedent's personal representative to recover "all" damages before the date of death. *Id.* at 27. We reasoned that preclusion of punitive damages in survival actions would produce an absurd re-

---

**2.** Courts in states that are not bound by the strict construction rule have explained the rationale for allowing punitive damages when wrongful death statutes are silent. For example, "[Utah] has traditionally permitted recovery of punitive damages in personal injury actions.... Consistency with general tort law suggests that the Utah wrongful death statute should be construed to permit punitive damages. If the Legislature had intended to prohibit the award of punitive damages, it could have done so expressly." *Behrens v. Raleigh Hills Hospital, Inc.,* 675 P.2d 1179, 1185 (Utah 1983) (citation omitted).

**3.** The survivor statute reads:

"(a) This section applies when a person: (1) receives personal injuries caused by the wrongful act or omission of another; and (2) subsequently dies from causes other than those personal injuries. (b) The personal representative of the decedent who was injured may maintain an action against the wrongdoer to recover all damages resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived. The damages inure to the exclusive benefit of the decedent's estate."
IC 34–9–3–4.

sult: "a tortfeasor would merely have to outlast a dying potential plaintiff to avoid liability for punitive damages."[4] *Id.*

The same reasoning applies with greater force to our interpretation of the damages provision in the wrongful death act. If, as we held in *Foster,* logic and policy require that punitive damages be available in actions in which the decedent died from nontortious conduct, the same logic and policy must require that punitive damages be available in actions in which the decedent died from tortious conduct. There is no rational distinction between plaintiffs in survival actions and plaintiffs in wrongful death actions. Further, the textual difference between the two statutory damages provisions does not mandate different treatment of the two sets of plaintiffs, both of whom have lost loved ones.[5] As one commentator has observed, the difference in recovery available in survival actions versus wrongful death actions is "largely based on historical accident and statutory construction, not on any strong public policy." Osborne Reynolds, *Punitive Damages after Death—Can Tort Law Create Heaven and Hell?,* 26 Okla.L.Rev. 63, 69 (1973). Indeed, as discussed below, the imposition of punitive damages for tortious lethal conduct may deter repetition of the conduct, thereby avoiding accidental deaths.

Defendants argue that allowing punitive damages in wrongful death cases will result in windfalls to plaintiffs who have not been directly injured by the tortious conduct. This windfall, however, is no greater than that available to plaintiffs in survival actions or in traditional tort actions.

Moreover, with regard to future plaintiffs there is now a statutory cap on punitive damages in civil actions, along with a requirement that seventy-five percent of any punitive damages award be placed into the violent crime victims compensation fund. *See* IC 34–51–3–1 through –6 (effective for causes of action accruing after June 30, 1995). These statutory limitations on punitive damages weaken the force of the defendants' argument.

■ In sum, we conclude that the damages provision in the general wrongful death statute is broad enough to allow recovery of punitive damages. Given this conclusion, we must examine the related case law to determine whether Indiana precedent bars such damages.

### 4. Case law

The defendants maintain that Indiana precedent precludes punitive damages in wrongful death actions. They present a well-founded argument citing the Indiana opinions that have rejected punitive damages claims. In particular, the defendants rely on four cases: *Huff v. White Motor Corp.,* 609 F.2d 286 (7th Cir.1979), *Estate of Kuba v. Ristow Trucking, Inc.,* 508 N.E.2d 1 (Ind.1987), *Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045 (Ind.Ct. App.1990), and *Andis v. Hawkins,* 489 N.E.2d 78 (Ind.Ct.App.1986), *trans. denied.* In response, the plaintiffs insist that none of these opinions are binding upon this court, and that in any event, the cases were wrongly decided.[6]

---

4. In *Foster,* we noted in passing the traditional rule that the wrongful death statute does not allow punitive damages. *Foster,* 716 N.E.2d at 27. The issue in Foster turned on the survival statute. In this case we are squarely presented with a reasoned challenge to the traditional rule.

5. Because analysis of constitutional principles is unnecessary for our holding, we do not consider whether our supreme court's holding in *Martin v. Richey,* 711 N.E.2d 1273

(Ind.1999) provides an alternate rationale for our holding in this case.

6. The plaintiffs rely heavily on another opinion, *Forte v. Connerwood Healthcare, Inc.,* 702 N.E.2d 1108 (Ind.Ct.App.1998). The *Forte* opinion, however, is no longer valid precedent. Our supreme court granted transfer of the *Forte* case after the parties here had completed their briefs. *Forte v. Connerwood Healthcare, Inc.,* 714 N.E.2d 172 (April 28, 1999); *see* Ind. Appellate Rule 11(B)(3).

The defendants are correct in their citation of the cases. Were our analysis limited to traditional hornbook law, we would simply hold for the defendant. However, the strength of the common law system is ratiocination, not rote adherence to hornbook rules. Our supreme court summarized the need to reassess judicially created rules as follows:

> "[J]udicial devotion to the doctrine of stare decisis is indeed a justifiable concept to be followed by our courts. However, it cannot and must not be so strictly pursued to the point where our view is opaqued and reality disregarded. To do so is to envision the common law to be ... immutable ... and thus render our system of jurisprudence forever impotent. The strength and genius of the common law lies in its ability to adapt to the changing needs of the society it governs."

*Brooks v. Robinson,* 259 Ind. 16, 22, 284 N.E.2d 794, 797 (Ind.1972) (abandoning interspousal immunity). Chief Justice Shepard explained our task more succinctly: "Judges should regard themselves as responsible for rules they have erected." *Miller v. Mayberry,* 506 N.E.2d 7, 12 (Ind. 1987) (concurring opinion).

■ The task in this case is to determine whether to depart from our court-created rule precluding punitive damages in general wrongful death actions. A court may make such a departure only after a careful examination of the rationale and logic of the existing rule. Here, we find that the rationale for the existing rule is no longer persuasive, for two reasons: first, the opinions defining the rule rely on an incomplete understanding of our supreme court's opinion in *Lindley v. Sink,* 218 Ind. 1, 14–15, 30 N.E.2d 456, 461 (1940); and second, the opinions are inconsistent with the present perception of the purpose of punitive damages and of the wrongful death statute.

The *Lindley* decision is the foundation for most of the opinions that reject punitive damages in wrongful death actions.

The issue in *Lindley* was whether the contributory negligence of one beneficiary precluded wrongful death recovery by all beneficiaries (long before the advent of comparative fault). The *Lindley* court never addressed punitive damages. Rather, the court addressed damages generally, writing that a wrongful death action "is given to afford compensation for those who have sustained pecuniary loss by the death." 218 Ind. at 14, 30 N.E.2d at 461. Nothing in the opinion expressly forbade punitive damages in wrongful death actions.

Although the *Lindley* decision made no reference to punitive damages, subsequent cases extended *Lindley* to hold that punitive damages are not available in wrongful death actions. These cases, including those the defendants rely upon here, interpreted *Lindley* as having defined a single, limited purpose for wrongful death actions: compensation for pecuniary losses. Based upon this understanding of *Lindley,* the subsequent cases held that no other damages are available in wrongful death actions. This reasoning, however, bears reconsideration in light of more recent explanations of both the purpose of the wrongful death statute and the role of punitive damages in our tort system. The decision as to the availability of punitive damages in wrongful death actions turns on the convergence, if any, between the purpose of the wrongful death statute and the purpose of punitive damages. *See In re Estate of Pickens v. Pickens,* 255 Ind. 119, 263 N.E.2d 151 (1970) (examining purpose of wrongful death statute to determine availability of remedy).

The wrongful death statute has two purposes, as our supreme court identified in *Pickens.* The court first stated:

> "The purpose of [the wrongful death] statute then is to create a cause of action to provide a means by which those who have sustained a loss by reason of the death may be compensated."

255 Ind. at 126, 263 N.E.2d at 155. However, the court also cited with approval the Michigan Supreme Court's explanation of the purpose of wrongful death actions:

> " 'The purpose of the statute is, of course, obvious: it was intended to remedy unconscionable results reached in litigation under the common law whereby it was financially less burdensome to tortfeasors to kill than merely to maim their victims.' "

*Mosier v. Carney*, 376 Mich. 532, 561, 138 N.W.2d 343, 353 (1965), *quoted in Pickens*, 255 Ind. at 130, 263 N.E.2d at 157.[7]

█ Restated from *Pickens*, the wrongful death statute has two purposes: (1) to compensate survivors for pecuniary losses arising from death, and (2) to ensure that wrongful death defendants face the same liability as personal injury defendants. The legislature has accomplished the first purpose by enacting the wrongful death statute. To accomplish the second purpose, a wrongful death defendant who has engaged in wilful or wanton conduct must be liable for punitive damages to the same extent as other tortfeasors.

Given that the imposition of liability for punitive damages fulfills the second purpose of the wrongful death statute, the courts should allow punitive damages unless doing so would be inconsistent with the structure of our tort system. Our supreme court found such an inconsistency in *Estate of Kuba v. Ristow Trucking, Inc.*, 508 N.E.2d 1 (Ind.1987). In *Kuba*, the court considered whether a plaintiff in a wrongful death action could recover treble damages under the statute that authorizes victims of certain crimes to bring civil actions seeking treble damages. The court examined the wrongful death statute and determined that "[i]n order to sustain a claim in a wrongful death action, the loss

alleged must be of a nature compatible with the purpose and guidelines of the [wrongful death] act." *Id.* at 3. Comparing the purpose of the treble damages statute with that of the wrongful death statute, the court found that the treble damages statute was "punitive in nature" and that the wrongful death statute was compensatory. *Id.* at 2. Given the discrepancy in the statutory purposes, the court determined that treble damages were adverse to the provisions of the wrongful death statute.

The *Kuba* decision addressed treble damages awarded pursuant to statute, not punitive damages allowable under common law. Moreover, the Indiana view of exemplary damages has not been static since *Kuba*. After the *Kuba* decision, the legislature broadened the scope of the treble damages statute to include recoveries for gang-related activities, interference with child custody, and confinement. IC 34–24–3–1 (reflecting amendments in P.L. 49–1989 § 2 and P.L. 180–1991 § 3). This broadening highlights two significant changes in the Indiana view of exemplary damages. First, it indicates that Indiana is increasingly receptive to imposing exemplary damages in appropriate circumstances. Second, the broadening confirms that Indiana no longer uses exemplary damages solely for punishment or retribution. Instead, Indiana has embraced the view that exemplary damages can have a deterrent effect, both on specific defendants and on others inclined toward wanton behavior. Indeed, our supreme court expressly recognized the deterrent effect of punitive damages, writing,

> "An award of punitive damages is designed to punish the defendant and to deter him and others from like conduct as a result of such tortious conduct, are entitled to recover those punitive damages the decedent would have recovered had he or she lived."
> *Vickery v. Ballentine*, 293 Ark. 54, 732 S.W.2d 160, 162 (1987).

---

7. Other jurisdictions have recognized the same purpose:

> "The purpose of our wrongful death laws is to allow an injured person's action and claim for damages to survive, notwithstanding the person's death. *A fortiori*, the surviving beneficiaries of the decedent, killed

in the future. All awards of punitive damages must be supported by a finding that the public interest will be served by punishing the wrongdoer."

*Bell v. Clark*, 653 N.E.2d 483, 490 (Ind.Ct. App.1995), *adopted on trans.*, 670 N.E.2d 1290 (Ind.1996) (citations omitted). Given the change in the view of punitive damages, the *Kuba* decision can no longer be read to bar punitive damages in wrongful death actions.

Similarly, the reasoning in this court's opinion in *Andis v. Hawkins*, 489 N.E.2d 78 (Ind.Ct.App.1986), *trans. denied* is less forceful than it was a decade ago. In *Andis,* we held that punitive damages may not be recovered in actions for the wrongful death of a child. We reasoned that wrongful death statutes allow recovery of pecuniary damages only, noting by way of example that "loss of love and affection are not proper elements of damage in an action for the wrongful death of a child." *Id.* at 83. One year after we decided *Andis,* the legislature changed the child wrongful death statute to allow recovery for loss of love and affection. P.L. 306–1987 § 1. The legislature thus rejected our reasoning that wrongful death statutes allow solely pecuniary damages.[8]

The *Andis* reasoning is subject to reexamination on another ground. In *Andis* we surveyed case law from other jurisdictions and found that the majority of decisions ruled against punitive damages in wrongful death actions. To obtain a comprehensive view of the national trend, however, we must consider statutory law as well as case law. When state wrongful death statutes are taken into consideration, the trend is clear: the majority of jurisdictions allow punitive damages in wrongful death actions. Twenty-seven states authorize punitive damages in wrongful death actions; twenty-two states

preclude punitive damages. SPEISER at § 3A:4. Sixteen of the states that allow punitive damages have done so by case law. *Id.* Thus, by authorizing punitive damages in wrongful death actions, Indiana would join the majority view on the issue. Based on this survey of state laws and on the legislature's revision of the child wrongful death law, we find that the *Andis* opinion is no longer persuasive with regard to punitive damages in wrongful death actions.[9]

■ Having examined *Andis* and the other cases cited by the defendants, we find that the rationale for the rule precluding punitive damages in general wrongful death actions is no longer sound. Aided by the parties' commendable briefs and their explanations at oral argument, we have studied the sources and purposes of Indiana's general wrongful death statute in comparison with the preclusion on punitive damages. We conclude that it is illogical to allow punitive damages in personal injury actions but not in wrongful death actions. We cannot perpetuate the adage that it is cheaper to kill than to maim with regard to general wrongful death actions. Accordingly, we hold that punitive damages are recoverable in wrongful death actions brought under IC 34–23–1–1, to the same extent that punitive damages are available in personal injury actions.

## 5. Equal Protection Argument

■ The plaintiffs make a fleeting argument that the denial of punitive damages in wrongful death cases violates the federal and Indiana equal protection clauses. We need not address this argument, because we have determined on other grounds that punitive damages are recoverable in wrongful death actions. In keeping with our supreme court's directive, we

---

8. Our supreme court has noted that the pecuniary loss rule in Indiana has been expanded to include loss of love and companionship. *Robinson v. Wroblewski,* 704 N.E.2d 467, 475 (Ind.1998).

9. In *Andis* we relied on the strict construction rule as a second ground for our decision. 489 N.E.2d at 81. As discussed in part 3, *supra,* the strict construction rule does not preclude a punitive damages award.

avoid constitutional questions when an issue can be resolved by statutory construction principles alone. *Indiana Wholesale Wine & Liquor Co. v. State*, 695 N.E.2d 99, 107–08 (Ind.1998).

## B. Husband's Loss of Consortium Claim

In their cross-appeal, the defendants challenge the portion of the trial court's judgment that allows the husband to proceed with his loss of consortium claim. The defendants first argue that a loss of consortium claim provides a recovery only from the time of injury until the time of death. Here, the defendants point out, Kathy Wade died only a few minutes after the injury. Contending that consortium claims are derivative actions, the defendants maintain that the few minutes that elapsed between the Wade's injury and her death are insufficient to support a derivative consortium claim.

The defendants also argue that the husband may not pursue a loss of consortium claim in combination with a wrongful death claim. To allow both claims, the defendants contend, would be to allow a double recovery. According to the defendants, the general wrongful death statute provides the sole remedy for the husband.

The husband counters that the time period between his wife's injury and her death is irrelevant, and that he should be able to recover loss of consortium damages for the duration of his life expectancy. In addition, he maintains that he may pursue his loss of consortium claim jointly with his wrongful death claim. For this proposition, he cites *Rogers v. R.J. Reynolds Tobacco Co.*, 557 N.E.2d 1045 (Ind.Ct.App. 1990).

In *Rogers*, the plaintiffs' claims were equivalent to the claims asserted in this case: a wrongful death punitive damages claim by an estate and a loss of consortium punitive damages claim by a surviving spouse. The trial court entered summary judgment denying both of the punitive damages claims. We affirmed on the wrongful death punitive damages claim, citing *Andis, supra.* We reversed, however, the loss of consortium punitive damages claim, writing, "[I]t would be anomalous to allow [the decedent's] death to insulate Defendants from liability for punitive damages when his widow claims them independently of the wrongful death statute." *Rogers*, 557 N.E.2d at 1057.

■ As the defendants point out, the *Rogers* case is factually distinguishable from the case here. In *Rogers*, the spouse initiated the action prior to decedent's death. After the death, the surviving spouse added the wrongful death claim. Here, both the wrongful death claim and the loss of consortium claim were brought after the decedent's death. Due to this distinction, the husband cannot rely solely on *Rogers* to support his position.

Two cases decided after the parties completed their briefing are instructive, however. In *Cahoon v. Cummings*, 715 N.E.2d 1 (Ind.Ct.App.1999) *trans. pending*, this court determined that a surviving spouse could pursue three causes of action simultaneously: a negligence claim under the survival statute, an individual loss of consortium claim, and a wrongful death claim. Like the husband in this case, the plaintiff in *Cummings* initiated the loss of consortium claim after the decedent's death. This court determined that in addition to suing for wrongful death, the decedent's wife could sue in her own capacity for loss of consortium. 715 N.E.2d at 10. With regard to the proof required on the consortium claim, the *Cummings* opinion explained that the consortium claim "is derived from [the decedent's] claim for pain and suffering." *Id.; accord Mayhue v. Sparkman*, 653 N.E.2d 1384, 1386 (Ind. 1995).

More recently, this court issued *Bemenderfer v. Williams*, 720 N.E.2d 400 (Ind. Ct.App.1999). *Bemenderfer* presented an issue very similar to that presented here: whether loss of consortium damages must

be limited to the time period between the decedent's injury and the decedent's death. In *Bemenderfer*, the decedent died three days after the tort, and the surviving husband died about two years later. This court held that the husband's consortium damages (recoverable by his representative) could cover the entire two years he outlived his wife. The court reasoned that to hold otherwise would give an unearned reprieve to the tortfeasor: "If a surviving spouse's loss of consortium claim ends on the date of a decedent spouse's death, the tortfeasor benefits by causing the death of a spouse rather than an injury." 720 N.E.2d at 408.

 The holdings in *Bemenderfer* and *Cummings* apply equally to this case. To prevail on his loss of consortium claim, the husband must prove all of the elements of his negligence claim against the defendants. *Cummings* at 10; *see also Mayhue v. Sparkman*, 653 N.E.2d at 1386 (Ind. 1995). Those elements are: (1) a duty owed to Wade by the defendants; (2) a breach of that duty by the defendants; and (3) an injury to Wade proximately caused by the breach. *Hayden v. University of Notre Dame*, 716 N.E.2d 603, 605–606 (Ind.Ct.App.1999). On the third element, the husband must prove some compensable injury to Wade separate from the proof of Wade's death.

 If the husband can prove the underlying tort, he may attempt to prove loss of consortium damages covering the normal life expectancy of the marriage.

In other words, the award may compensate the husband for lost consortium from the date of Wade's injury until the date the marriage would have ended due to the death of one of the spouses from natural causes.[10] *Cf. Robinson v. Wroblewski*, 704 N.E.2d 467, 475 (Ind.1998) (child wrongful death act allows recovery of loss of companionship damages until the death of the last surviving parent).

Reversed in part, affirmed in part.

DARDEN, J., concurs.

BROOK, J., concurs with separate opinion.

BROOK, Judge, concurring

I concur wholeheartedly with the majority's reasoning and result, but write separately to emphasize that a predominant number of states have already recognized what the majority today recognizes: that a "law which allows the fortuitous circumstance of death to insulate a defendant from liability for punitive damages" and which sends a clear message that it is cheaper to kill than to injure is intolerable. *See Forte v. Connerwood Healthcare, Inc.*, 702 N.E.2d 1108, 1117, n. 7 (Ind.Ct.App. 1998), *trans. granted*, 714 N.E.2d 172 (1999); *see also* PROSSER AND KEETON, TORTS § 127, at 945 (5th ed.). Indeed, sixteen states have rejected as absurd the proposition that punitive damages should be disallowed simply because their wrongful death statutes do not expressly provide for such recovery,[11] and an additional twelve states

---

10. The husband is not, however, entitled to a double recovery for the same injury. If the husband elects to pursue both the wrongful death claim and the loss of consortium claim at trial, the trial court must instruct the jury that only a single award is permissible. *See e.g., Cummings*, 715 N.E.2d at 15.

11. Alabama (*Young v. Bryan*, 445 So.2d 234, 238 (Ala.1983) (only damages recoverable for wrongful death are punitive damages)); Alaska (*Tommy's Elbow Room v. Kavorkian*, 727 P.2d 1038, 1048–49 (Alaska 1986)); Arizona (*Bryant v. Silverman*, 146 Ariz. 41, 42, 703 P.2d 1190, 1196 (1985)); Arkansas (*Vickery v.*

*Ballentine*, 293 Ark. 54, 56, 732 S.W.2d 160, 162 (1987)); Connecticut (*Gionfriddo v. Avis Rent A Car Sys., Inc.*, 192 Conn. 280, 292, 472 A.2d 306, 312 (1984)); Florida (*Martin v. United Sec. Servs., Inc.*, 314 So.2d 765, 771–72 (Fla.1975)); Idaho (*Gavica v. Hanson*, 101 Idaho 58, 63, 608 P.2d 861, 864 (Idaho 1980), *overruled on other grounds by Sterling v. Bloom*, 723 P.2d 755, 111 Idaho 211 (1986) (*Sterling* was superseded by statute on the same unrelated grounds as stated in *Harris v. State, Dep't of Health & Welfare*, 123 Idaho 295, 847 P.2d 1156 (1992))); Iowa (*Koppinger v. Cullen–Schiltz & Assoc.*, 513 F.2d 901, 909 (8th Cir.1975) (applying Iowa law)); Missis-

have eliminated any doubt on this issue by enacting wrongful death statutes that expressly authorize the recovery of punitive damages.[12] *See* Michael D. Moeller, Comment, *Punitive Damages in Wrongful Death Actions: How Will Kansas Respond?*, 39 U.Kan.L.Rev. 199 (1990) (nationwide survey of wrongful death statutes and their treatment of punitive damages).

These authorities have reached such a conclusion on the basis that the purpose behind the imposition of punitive damages, namely the punishment of the wrongdoer and the deterrence of future acts, is unaffected by the death of the injured party. *See* Jay M. Zitter, Annotation, *Claim for Punitive Damages in Tort Action as Surviving Death of Tortfeasor or Person Wronged,* 30 A.L.R.4th 707, 710, 1984 WL 263451 (1984); *see also United Farm Bureau Mut. Ins. Co. v. Ira,* 577 N.E.2d 588, 596 (Ind.Ct.App.1991) (purpose of punitive damages), *trans. denied.* "If wrongful conduct is to be deterred by the award of punitive damages, that policy should not be thwarted because the wrongdoer succeeds in killing his victim." *Gavica v. Hanson,* 101 Idaho 58, 608 P.2d 861, 864 (1980), *overruled on other grounds by Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986).[13] To hold otherwise would violate the well-settled precept that we avoid a statutory construction producing an absurd result. *See id.; see also Chavis v. Patton,* 683 N.E.2d 253, 259 (Ind.Ct.App. 1997) (statutes are to be construed to pre-

sippi (*Thornton v. Insurance Co. of N. America,* 287 So.2d 262, 265 (Miss.1973), *superseded by civil procedure rule on other grounds as stated in Estate of Jackson v. Mississippi Life Ins. Co.,* 1999 WL 308821 (Miss.App.1999)); Missouri (*Blum v. Airport Terminal Servs.,* 762 S.W.2d 67, 73 (Mo.Ct.App.1988)); Montana (*Gagnier v. Curran Constr. Co.,* 151 Mont. 468, 479–80, 443 P.2d 894, 900 (1968)); Nevada (*Porter v. Funkhouser,* 79 Nev. 273, 276, 382 P.2d 216, 217 (1963)); South Carolina (*Smoak v. Seaboard Coast Line R.R.,* 259 S.C. 632, 639–40, 193 S.E.2d 594, 597 (1972)); Tennessee (*Louisville & N.R. Co. v. Satterwhite,* 112 Tenn. 185, 211, 79 S.W. 106, 112 (1904)); Utah (*Behrens v. Raleigh Hills Hospital,* 675 P.2d 1179, 1185 (Utah 1983)); West Virginia (*Bond v. City of Huntington,* 166 W.Va. 581, 593, 276 S.E.2d 539, 545 (1981), *superseded by statute on other grounds as stated in Rice v. Ryder,* 184 W.Va. 255, 400 S.E.2d 263 (1990)).

12. Kentucky—Ky.Rev Stat.Ann. § 411.130 ("[i]f the act was willful or the negligence gross, punitive damages may be recovered").

Maine—Me.Rev.Stat.Ann. tit. 18–A, § 2–804 (jury "may give damages not exceeding $75,-000").

Massachusetts—Mass.Gen.Laws., ch. 229, § 2 ("punitive damages [allowed] in an amount not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant").

Minnesota—Minn.Stat. § 573.02 ("[p]unitive damages may be awarded").

New Mexico—N.M.Stat.Ann. § 41–2–3 ("jury in every such action may give such damages, compensatory and exemplary, as they shall deem fair and just").

New York—N.Y. Est. Powers & Trusts Law § 5–4.3 ("punitive damages may be awarded if such damages would have been recoverable had the decedent survived").

North Carolina—N.C.Gen.Stat. § 28A–18–2(b)(5) (damages include "[s]uch punitive damages as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through malice or willful or wanton conduct").

Oklahoma—Okla.Stat.Ann. tit. 12, § 1053 ("punitive or exemplary damages may also be recovered").

Oregon—Or.Rev.Stat. § 30.020(2)(e) (damages include "punitive damages, if any, which the decedent would have been entitled to recover from the wrongdoer if the decedent had lived").

Texas—Tex.Civ.Prac. & Rem.Code Ann. § 71.009 ("[w]hen the death is caused by the willful act or omission or gross negligence of the defendant, exemplary as well as actual damages may be recovered").

Virginia—Va.Code Ann. § 8.01–52 ("[p]unitive damages may be recovered for willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others").

Wyoming—Wyo.Stat. § 1–38–102 ("court or jury ... may award such damages, pecuniary and exemplary, as shall be deemed fair and just").

13. *Sterling* was superseded by statute on grounds unrelated to the issue of punitive damages as stated in *Harris v. State, Dep't of Health & Welfare,* 123 Idaho 295, 847 P.2d 1156 (1992).

vent any absurdity or result the legislature, as a reasonable body, could not have intended). It would further force this Court to engage in legal gymnastics to justify an anomalous rule that punishes a defendant for acts resulting in less grievous injuries and protects him when the same acts result in death. Death of the injured party is not and should not be the "death" of punitive damages.

As so poignantly articulated by the Utah Supreme Court,

> [the argument that punitive damages should be prohibited when the wrongful death statute does not specifically allow them] would make sense in states ... that do not allow punitive damages at all. But it makes no sense for a state that allows punitive damages for a wilful [sic], wanton, malicious, reckless or grossly negligent tort that results in personal injury, emotional anguish, or property damage, to deny such punitive damages where the injury victim happens to die. Death is, after all, the final injury—the ultimate insult. Such a result defies logic and distorts symmetry in the law.

*Behrens v. Raleigh Hills Hospital,* 675 P.2d 1179, 1185 (Utah 1983). The Arkansas Supreme Court echoed those sentiments in concluding that

> the purpose of punitive damages is not to compensate the injured party but to impose a monetary penalty on the defendant and to discourage others from similar behavior. That purpose is unquestionably the same whether the injured person lives or dies as a result of the defendant's willful or wanton conduct. In fact, in such situations where a death ensues, it may be argued plausibly that punitive damages, considering their deterrent effect, are more readily justified.

*Vickery v. Ballentine,* 293 Ark. 54, 56, 732 S.W.2d 160, 162 (1987); *see also, e.g., Tommy's Elbow Room, Inc. v. Kavorkian,* 727 P.2d 1038, 1048–49 (Alaska 1986) (unlikely that legislature intended that person injured by negligent defendant would recover punitive damages but that estate of one

killed by such defendant would not, when purpose of punitive damages is deterrence); *Bond v.. City of Huntington,* 166 W.Va. 581, 593, 276 S.E.2d 539, 545 (1981) (deterrence principle of punitive damages is perfectly compatible with wrongful death claim and perhaps even more appropriate than in actions for less severe injuries), *superseded by statute on other grounds as stated in Rice v. Ryder,* 184 W.Va. 255, 400 S.E.2d 263 (1990); *Martin v. United Sec. Servs., Inc.,* 314 So.2d 765, 771 (Fla.1975) (difficult to accept proposition that legislature intended tortfeasors to be punished for malicious and reckless acts when they maim another but not when those same acts result in death of victim). Likewise, it would be contrary to principles of both logic and equity for this Court to "perpetuate the adage that it is cheaper to kill than to maim." *See* Op. at 363.

Defendants argue that existing Indiana precedent precludes an award of punitive damages in wrongful death actions. Even so, we must also "honor our duty to scrupulously investigate the wisdom of our precedents established previously and if a rule announced in an opinion works an obvious injustice upon litigants and · is not supported by reasonable authority, it should be eliminated from the body of precedents." *Forte,* 702 N.E.2d at 1117, n. 8; *see also Morton v. Merrillville Toyota, Inc.,* 562 N.E.2d 781, 784 (Ind.Ct.App. 1990) (it is duty of court to investigate wisdom of precedents established many years ago); *New York, C. & St. L.R. Co. v. Henderson,* 237 Ind. 456, 465, 146 N.E.2d 531, 537 (1957) (where rule works obvious injustice and is not supported by authority, it should be eliminated from body of precedents), *modified on other grounds by Shuamber v. Henderson,* 579 N.E.2d 452 (Ind. 1991). We do so here today, reaching a result that is soundly aligned with the many states that have decided the question before us, and a decision that is above all, just.